STATE of Tennessee, Appellee,

v.

Richard ODOM, a/k/a Otis
Smith, Appellant.

Supreme Court of Tennessee,
at Jackson.

June 3, 1996.

Rehearing Denied Sept. 9, 1996.

A.C. Wharton, Shelby County Public Defender, W. Mark Ward, Assistant Public Defender, Memphis, Brock Mehler, Capital Case Resource Center, Nashville, for Appellant on appeal.

Edward Thompson, Carolyn Watkins, Assistant Public Defenders, Memphis, for Appellant at trial.

Charles W. Burson, Attorney General and Reporter, Rebecca Gundt, Assistant Attorney General, Michael E. Moore, Solicitor General, Nashville, John W. Pierotti, District Attorney General, Don D. Strother, Phillip Gerald Harris, Assistant District Attorneys General, Memphis, for Appellee.

## OPINION

BIRCH, Justice.

In this capital case, the defendant, Richard Odom, was convicted by a Shelby County jury of first-degree murder committed in the perpetration of rape.[1] At the sentencing hearing, the jury found three aggravating circumstances beyond a reasonable doubt: (1) the defendant had been previously convicted of one or more violent felonies; (2) the murder was especially heinous, atrocious, or cruel; and (3) the murder was committed

---

1. Tenn. Code Ann. § 39–13–202(a)(2).

during the defendant's escape from lawful custody or from a place of lawful confinement. Tenn. Code Ann. § 39–13–204(i)(2), (5), and (8). The jury found the aggravating circumstances outweighed the mitigating circumstances beyond a reasonable doubt and sentenced the defendant to death by electrocution. We address five issues:

(1) Whether the standard of review for trial court rulings on suppression issues is a "preponderance of the evidence" standard, or an "any material evidence" standard;

(2) Whether this Court should adopt a rule of law requiring the electronic recording of custodial interrogations;

(3) Whether the trial court's failure to admit portions of the testimony of John Hutson, Ph.D., a clinical psychologist, at the sentencing phase of the trial, was reversible error;

(4) Whether the change in Tenn. Code Ann. § 39–13–204(e) adding the language "No distinction shall be made between mitigating circumstances as set forth in subsection (j) and those otherwise raised by the evidence which are specifically requested by either the state or the defense to be instructed to the jury" is evidence of the legislature's intent that trial courts specifically charge the jury on nonstatutory mitigating factors; and

(5) Whether the definition of "serious physical abuse" in the "heinous, atrocious, and cruel" aggravator of Tenn. Code Ann. § 39–13–204(i)(5) is unconstitutionally vague.

We have determined from our independent review of the record before us that Odom received a fair trial in the convicting phase and that the jury's verdict of "guilty" of first-degree murder (felony) and aggravated rape is sufficiently supported by the evidence. Accordingly, the convictions are affirmed. We conclude, however, that reversible error was committed in the sentencing phase in the following regard: (1) the intermediate court's conclusion that the "heinous, atrocious, or cruel" aggravating circumstance was supported by the evidence; (2) the jury's finding that "[t]he murder was committed by the defendant while the defendant was in lawful custody or in a place of lawful confinement or during the defendant's escape from lawful custody or from a place of lawful confinement;" (3) the trial court's failure to permit the defendant to present mitigating evidence in the form of Dr. John Hutson's testimony; and (4) the trial court's failure to properly instruct the jury as to nonstatutory mitigating circumstances raised by the evidence and specifically requested by the defendant. Tenn. Code Ann. § 39–13–204(i)(8)(Supp.1995).

Considering the entire record of the sentencing hearing, we find the errors found therein involve substantial rights and more probably than not affected the sentencing judgment or would result in prejudice to the judicial process. Tenn. R.App. P. 36(b). Accordingly, the sentence of death is vacated, and the cause is remanded for a new sentencing hearing.

## FACTS

The defendant does not challenge the sufficiency of the convicting evidence. Nevertheless, a brief summary of that evidence, adduced at the guilt phase, will put the issues in perspective. Other evidence will be discussed as is appropriate to specific issues.

The record indicates that at approximately 1:15 p.m. on May 10, 1991, Ms. Mina Ethel Johnson left the residence of her sister, Ms. Mary Louise Long, to keep a 2:30 p.m. appointment with her podiatrist, Stanley Zellner, D.P.M. She agreed to purchase a few groceries while she was out. Johnson had not returned at 5 p.m.; this delay prompted Long to call Zellner. He told Long that Johnson had not kept her appointment. As a result of a subsequent call from Long, Zellner agreed to return to his office and look for Johnson's car in the parking garage. He located her car in the parking garage and observed her body inside. He went immediately to the Union Avenue police precinct and notified officers.

Investigating officers found Johnson's body on the rear floorboard of her car with her face down in the back seat. Her dress was up over her back, and an undergarment was around her ankles. One of several latent

fingerprints lifted from the "left rear seat belt fastener" of Johnson's car matched a fingerprint belonging to the defendant, Richard Odom, alias Otis Smith.

The medical examiner testified that Johnson had suffered multiple stab wounds to the body, including penetrating wounds to the heart, lung, and liver. These wounds caused internal bleeding and, ultimately, death. The medical examiner noted "defensive" wounds on her hands. Further examination revealed a tear in the vaginal wall and the presence of semen inside the vagina. In the medical examiner's opinion, death was neither instantaneous nor immediate to the wounds but had occurred "rather quickly."

Three days after the incident, Sergeant Ronnie McWilliams of the Homicide Unit, Memphis Police Department, arrested the defendant. As a result of a search incident to arrest, McWilliams confiscated a large, open, lock-blade knife from the defendant. When they arrived at the homicide office, McWilliams told the defendant of the charges against him and read his *Miranda* rights to him. The defendant executed a "Waiver of Rights" form, signing "Otis Smith." A short time later he acknowledged having identified himself falsely, executed a second rights waiver by signing "Richard Odom" and gave McWilliams a complete, written statement.

In his statement, the defendant said that his initial intention was to accost Johnson and "snatch" her purse after having seen her in the parking garage beside her car. He ran to her and grabbed her; both of them fell into the front seat. He then pushed her over the console into the rear seat. He "cut" Johnson with his knife. Johnson addressed him as "son." This appellation apparently enraged the defendant; he responded that "[he] would give her a son." He penetrated her vaginally; he felt that Johnson was then still alive because she spoke to him. Beyond the first wound, the defendant claimed not to have remembered inflicting the other stab wounds. Thereafter, the defendant climbed into the front seat and rifled through Johnson's purse. He found nothing of value to him, except the car keys, which he later discarded. He then went to an abandoned building where he had clothing and changed clothes.

The defendant presented no evidence at this phase of the trial. Based on the evidence above, the jury convicted the defendant of first-degree murder committed in the perpetration of rape.

## STANDARD OF REVIEW OF SUPPRESSION ISSUE

■ Pretrial, the defendant moved to suppress the statements he had given to police following his arrest. He claimed that he had been threatened and coerced into confessing and that his repeated requests for an attorney were refused. At the suppression hearing, McWilliams testified that the defendant was never threatened or coerced and that he never requested an attorney. The trial court weighed the credibility of the witnesses and accredited the testimony of McWilliams. The trial court found that the defendant knew and understood his constitutional rights and had voluntarily waived those rights before giving his confession. The Court of Criminal Appeals in reviewing this issue stated:

> The determination by a trial court that a confession was given knowingly and voluntarily is binding on the appellate courts unless the defendant can show that the evidence preponderates against the trial court's ruling. *State v. O'Guinn*, 709 S.W.2d 561, 566 (Tenn.1986). There is no proof in the record which preponderates against the findings of the trial court.

In our consideration of this issue, we note that appellate courts of this state have not been consistent in the choice of standard under which a trial court's findings of fact and conclusions of law on suppression issues are reviewed. Some courts, as did the Court of Criminal Appeals in this case, have applied a "preponderance of the evidence standard." *See, e.g., State v. Stephenson*, 878 S.W.2d 530, 544 (Tenn.1994)("[A] trial court's determination at a suppression hearing is presumptively correct on appeal.... [T]he presumption of correctness may only be overcome on appeal if the evidence in the record preponderates against the trial court's findings."); *State v. Kelly*, 603 S.W.2d 726,

729 (Tenn.1980)("[T]he Court of Criminal Appeals and this Court are bound to accept that determination [by the trial court that a confession was freely and voluntarily given] unless the evidence in the record preponderates against that finding."); *State v. Adams*, 859 S.W.2d 359, 362 (Tenn.Crim.App.1992)("Findings of fact made by the trial judge after an evidentiary hearing of a motion to suppress are afforded the weight of a jury verdict, and this court will not set aside the trial court's judgment unless the evidence contained in the record preponderates against his findings.").

Frequently, however, courts have used the "any material evidence" standard to review a trial court's decision on a suppression motion. *See, e.g., State v. Nichols*, 877 S.W.2d 722, 732 (Tenn.1994)("With regard to the claim that the confession was involuntary, a trial court's determination at a suppression hearing will not be overturned if there is any material evidence to support it."); *State v. Van Tran*, 864 S.W.2d 465, 473 (Tenn.1993)("Findings of fact made by a trial court on issues surrounding the giving of a custodial statement are binding upon appellate review if there is any evidence to support them."); *State v. Irick*, 762 S.W.2d 121, 127 (Tenn.1988), *cert. denied*, 489 U.S. 1072, 109 S.Ct. 1357, 103 L.Ed.2d 825 (1989)("If there is material evidence to support the finding of the trial judge, that determination is binding upon the appellate courts."); *State v. Johnson*, 661 S.W.2d 854, 860 (Tenn. 1983)("A trial court's factual determination of the voluntariness of a defendant's confession and of compliance with the requirements of the *Miranda* decision is conclusive on appeal if there be any material evidence to support the determination."); *State v. Pritchett*, 621 S.W.2d 127, 133 (Tenn.1981)("The trial judge's ruling that the statement was freely and voluntarily given has the weight of a jury verdict in this Court if there is any material evidence to support it.").

On occasion, courts have combined the two standards. *See, e.g., State v. Harbison*, 704 S.W.2d 314, 318 (Tenn.1986)("[T]he presumption of correctness [of the trial court's findings] may only be overcome on appeal if the evidence in the record preponderates against the trial court's finding.... [S]uch a ruling is binding on this Court if there is any material evidence to support it."); *State v. Killebrew*, 760 S.W.2d 228, 233 (Tenn.Crim.App. 1988)(The trial judge's findings "at the conclusion of a suppression hearing are afforded the weight of a jury verdict; and this Court will not set aside the judgment ... unless the evidence ... preponderates against his findings. Where ... there is material evidence ... to support the trial judge's finding ... this Court is required to affirm his judgment.").

Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence. So long as the greater weight of the evidence supports the trial court's findings, those findings shall be upheld. In other words, a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise. We also note that this standard of review is consistent with Tenn. R.App. P. 13(d), which provides that in civil cases, findings of fact by a trial court are presumed correct "unless the preponderance of the evidence is otherwise." Hereafter, the proper standard to be applied in reviewing suppression issues is the "preponderance of the evidence" standard.

The Court of Criminal Appeals applied the proper standard in upholding the trial court's denial of the suppression motion. That court found, as we do, that the evidence does not preponderate against the trial court's ruling that the defendant knowingly and voluntarily waived his Fifth Amendment rights; consequently, the confession was properly admitted at trial.

## TAPE RECORDING OF CUSTODIAL INTERROGATIONS

The defendant has fully briefed the issue whether "station-house interrogations should be recorded." Predictably, he asserts that

they should be. Because this is not a dispositive issue, we decline to address it. Even so, we believe that the issue is one more properly directed to the General Assembly.

## SENTENCING HEARING

As we have stated, reversible error was committed during the sentencing phase. The legislature has mandated that this Court, when reviewing capital cases, determine whether the evidence supports the jury's finding of statutory aggravating circumstance(s). Tenn. Code Ann. § 39–13–206 (Supp.1995). Additionally, Tenn. R.Crim. P. 52(b) authorizes appellate courts to notice, at any time, error which has affected the substantial rights of an accused even though not raised in the motion for new trial or assigned as error on appeal, in the discretion of the appellate court where necessary to do substantial justice.

## A. AGGRAVATING CIRCUMSTANCES

■ The State introduced evidence of the defendant's previous conviction in Rankin County, Mississippi, for first-degree murder. Additionally, the State proved a 1991 Shelby County conviction for robbery. Together, these two convictions provided the requisite basis for the jury's finding that the defendant had been previously convicted of one or more violent felonies. Tenn. Code Ann. § 39–13–204(i)(2)(Supp.1995).

In proving the second aggravating circumstance—"the murder was heinous, atrocious, or cruel," Tenn. Code Ann. § 39–13–204(i)(5)—the State relied chiefly upon the evidence adduced during the guilt phase. As additional evidence, the State introduced photographs of the victim's body taken after it had been removed from the car. For the reasons appearing below, we find that the evidence was insufficient to support the finding of this aggravating circumstance.[2]

In this case, we are presented with our first opportunity to address the constitutionality of the "heinous, atrocious, and cruel" statutory aggravating circumstance as amended in 1989. Tenn. Code Ann. § 39–13–204(i)(5) provides:

> The murder was especially heinous, atrocious, or cruel in that it involved torture or serious physical abuse beyond that necessary to produce death.

The issue, as the defendant has framed it, has two prongs: (1) the sufficiency of the evidence supporting the finding of this aggravating circumstance; and (2) the constitutionality of the aggravating circumstance as defined and applied. Since the prongs overlap, we will consider them together.

In the Court of Criminal Appeals, the defendant contended that the evidence was insufficient under the *Jackson v. Virginia*[3] standard to support the jury's finding of the (i)(5) aggravating circumstance. In concluding that the evidence was, indeed, sufficient, the intermediate court considered, but stopped short of adopting, the definition of physical abuse promulgated by the Utah Supreme Court in *State v. Tuttle*.[4] The Utah court defined "serious physical abuse" as "[that physical abuse which is] qualitatively and quantitatively different and more culpable than that necessary to accomplish the murder." 780 P.2d at 1217. The intermediate court then reiterated the definition of "torture" as "the infliction of severe physical or mental pain upon the victim while he or she remains alive and conscious." *State v. Williams*, 690 S.W.2d 517, 529 (Tenn.1985). At that point, apparently, the intermediate court combined the two definitions and into that product factored other language from *Williams*: "In proving such torture, depravity may be shown by acts occurring at or shortly after the victim's death." The intermediate court then concluded that the evidence supported the finding of the heinous,

---

**2.** For a detailed discussion and state-by-state analysis of the "especially heinous" aggravating circumstance see Richard A. Rosen, *The "Especially Heinous" Aggravating Circumstance in Capital Cases—The Standardless Standard*, 64 N.C. L.Rev. 941 (1986).

**3.** 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

**4.** 780 P.2d 1203 (Utah 1989), *cert. denied*, 494 U.S. 1018, 110 S.Ct. 1323, 108 L.Ed.2d 498 (1990).

atrocious, and cruel aggravating circumstance.

In this Court, the defendant challenges the intermediate court's definition of "serious physical abuse" as constitutionally insufficient. He vigorously urges us to adopt the *Tuttle* definition as Tennessee's definition of "serious physical abuse" in applying the aggravating circumstance under review.[5]

The State, however, insists that the term "serious physical abuse beyond that necessary to produce death" meets applicable federal and state constitutional standards as it is written and requires no further definition. Thus, the State, with equal vigor, urges us to reject the *Tuttle* language.

■ The State has a constitutional responsibility to tailor and apply its death penalty law in a manner that avoids the arbitrary and capricious infliction of this ultimate penalty. *Godfrey v. Georgia*, 446 U.S. 420, 427, 100 S.Ct. 1759, 1764, 64 L.Ed.2d 398 (1980). "[A]n aggravating circumstance must genuinely narrow the class of persons eligible for the death penalty," *Zant v. Stephens*, 462 U.S. 862, 877, 103 S.Ct. 2733, 2742, 77 L.Ed.2d 235 (1983), and "provide a meaningful basis for distinguishing the few cases in which the death penalty is imposed from the many cases in which it is not," *Furman v. Georgia*, 408 U.S. 238, 313, 92 S.Ct. 2726, 2764, 33 L.Ed.2d 346 (1972)(White, J., concurring).

As a constitutionally necessary first step under the Eighth Amendment, the Supreme Court has required the states to narrow the sentencers' consideration of the death penalty to a smaller, more culpable class of homicide defendants than the pre-*Furman* class of death-eligible murderers. *See Pulley v. Harris*, 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). A proper narrowing device insures that, even though some defendants who fall within the restricted class of death-eligible defendants manage to avoid the death penalty, those who receive it will be among the worst murderers—those whose crimes are particularly serious, or for whom

the death penalty is peculiarly appropriate. *See Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).

The United States Supreme Court has implicitly approved the statutory language of the aggravating circumstance at issue. In *Maynard v. Cartwright*, the Court opined that "a heinous, atrocious or cruel aggravator would be constitutionally acceptable if construed to require torture or serious physical abuse." 486 U.S. 356, 364–65, 108 S.Ct. 1853, 1859, 100 L.Ed.2d 372 (1988). The Court acknowledged, however, that some kind of torture or serious physical abuse was not the only limiting construction that would be constitutionally acceptable. *Id.* at 365, 108 S.Ct. at 1859; *see also Walton v. Arizona*, 497 U.S. 639, 652–55, 110 S.Ct. 3047, 3056–58, 111 L.Ed.2d 511 (1990).

Other courts reviewing statutory aggravating circumstances similar to those of Tennessee have upheld death sentences imposed in reliance on such aggravators. *See Hatch v. Oklahoma*, 58 F.3d 1447, 1468–69 (10th Cir.1995)(a limiting construction mandating that the murder involve "torture of the victim or serious physical abuse" was constitutionally permissible); *Battle v. Delo*, 19 F.3d 1547, 1562 (8th Cir.1994)(" 'some kind of torture or serious physical abuse is [a sufficient limiting] construction' "); *Bertolotti v. Dugger*, 883 F.2d 1503, 1526–27 (11th Cir.1989), *cert. denied*, 497 U.S. 1032, 110 S.Ct. 3296, 111 L.Ed.2d 804 (1990)(Florida's limiting construction that required the murder to be a "conscienceless or pitiless crime which is unnecessarily tortuous to the victim" was approved); *State v. Breton*, 212 Conn. 258, 562 A.2d 1060, 1066 (1989)(for the murder to be "especially cruel" it had to involve "the intentional infliction of extreme pain or torture above and beyond that necessarily accompanying the underlying killing"); *Conner v. State*, 632 So.2d 1239 (Miss.1993), *cert. denied*, —— U.S. ——, 115 S.Ct. 314, 130 L.Ed.2d 276 (1994)(Mississippi's limiting instruction that required the murder to be a "conscienceless or pitiless crime which is un-

---

5. The defendant suggests, but does not argue, that the jury be required to make two additional determinations before finding this aggravating circumstance: (1) that the defendant specifically

intended to inflict such "serious physical abuse;" and (2) that such abuse was inflicted before death. We decline to extend the definition of "serious physical abuse" in this manner.

necessarily tortuous to the victim" was approved); *State v. Griffin,* 756 S.W.2d 475, 490 (Mo.1988), *cert. denied,* 490 U.S. 1113, 109 S.Ct. 3175, 104 L.Ed.2d 1036 (the murder must involve "serious physical abuse" and "evidence that the murder victim ... [was] ... beaten or evidence that numerous wounds were inflicted upon a victim" is sufficient); *State v. Davis,* 309 S.C. 326, 422 S.E.2d 133, 148 (1992), *cert. denied,* 508 U.S. 915, 113 S.Ct. 2355, 124 L.Ed.2d 263 (1993) ("physical torture occurs when a person is subject to 'serious physical abuse' and 'aggravated battery' ").

We decline to adopt the definition of "serious physical abuse" set out by the Utah Supreme Court in *State v. Tuttle* because that definition fails to provide guidance to a capital sentencer beyond that which our statute already provides. The Utah statute at issue in *Tuttle* provided that a knowing and intentional killing was first-degree murder punishable by death if "[t]he homicide was committed in an especially heinous, atrocious, cruel, or exceptionally depraved manner, any of which must be demonstrated by physical torture, serious physical abuse, or serious bodily injury of the victim before death." Utah Code Ann. § 76-5-202(1)(q)(Supp.1988). As the Utah Court noted, the language of the statute could be interpreted so broadly as to describe all murders not resulting in instantaneous death and, therefore, did not sufficiently narrow the class of offenders subject to the death penalty. 780 P.2d at 1216. By contrast, Tenn. Code Ann. § 39-13-204(i)(5) narrows the construction of "serious physical abuse" to abuse "beyond that necessary to produce death."

■ As discussed above, Tenn. Code Ann. § 39-13-204(i)(5) narrows and defines the meaning of "heinous, atrocious, or cruel" in that the act must involve "torture or serious physical abuse beyond that necessary to produce death." "Torture" has been defined as the infliction of severe physical or mental pain upon the victim while he or she remains alive and conscious. *State v. Williams,* 690 S.W.2d 517, 529 (Tenn.1985). Because the legislature added the words "serious physical abuse," it must be assumed that the legisla-

ture intended the words "serious physical abuse" to mean something distinct from "torture." The word "serious" alludes to a matter of degree. The abuse must be physical, as opposed to mental, and it must be "beyond that" or more than what is "necessary to produce death." "Abuse" is defined as an act that is "excessive" or which makes "improper use of a thing," or which uses a thing "in a manner contrary to the natural or legal rules for its use." *Black's Law Dictionary* 11 (6th ed. 1990). We find the language of the statute constitutionally sufficient to narrow the class of offenders subject to the death penalty.

■ The issue remains whether the evidence in this case was sufficient to uphold a finding of the (i)(5) aggravating circumstance. We well understand that almost all murders are "heinous, atrocious, and cruel" to some degree, and we have no purpose to demean or minimize the ordeal this murder victim experienced. In our view, however, rape (penile penetration) does not ordinarily constitute "torture" or "serious physical abuse" within the meaning of the statute. Were we to hold otherwise, every murder committed in the perpetration of rape could be classified as a death-eligible offense. Such a result, obviously, would not sufficiently narrow the class of perpetrators, nor would it distinguish the "worst of the worse" for whom the ultimate penalty must be reserved. *See State v. Middlebrooks,* 840 S.W.2d 317 (Tenn.1992). In a similar vein, and with the same disclaimer above-appearing, we must reject the conclusion that the three stab wounds evidenced in this case constituted "torture" or serious physical abuse beyond that necessary to produce death.

■ As we consider the circumstances here, we do not intend to diminish what surely must have been a terrifying and horror-filled experience for the victim. Most assuredly, the murder was reprehensible in the purest sense of the word—nearly all murders are. However, the aggravating circumstance under review must be reserved for application only to those cases which, by comparison or contrast, can be articulately

determined to be the very "worst of the worse."

As previously stated, the defendant contends that the evidence does not support the jury's finding that the murder was "especially heinous, atrocious, or cruel." We have thoroughly considered this contention and conclude that under the criteria we have discussed the evidence in the record does not support the jury's finding of the "heinous, atrocious, and cruel" circumstance.

■ For the third aggravating circumstance, Tenn. Code Ann. § 39–13–204(i)(8), the State proved that the defendant had escaped on March 28, 1991, from the Mississippi jail where he was serving a life sentence for murder. This aggravating circumstance allows imposition of the death penalty upon a finding that "the murder was committed by the defendant while the defendant was in lawful custody or in a place of lawful confinement or during the defendant's escape from lawful custody or from a place of lawful confinement."

In our view, the record before us contains no justification for the jury's finding of the (i)(8) aggravating circumstance. Based on our prior application of (i)(8), the requisites simply have not been met. *See, e.g., Hartman v. State*, 896 S.W.2d 94, 104 (Tenn.1995)(murder committed while defendant, a prison "trusty," was in constructive custody of sheriff department); *State v. Sutton*, 761 S.W.2d 763, 767 (Tenn.1988), *cert. denied*, 497 U.S. 1031, 110 S.Ct. 3287, 111 L.Ed.2d 796 (1990)(murder committed while defendant was in place of lawful confinement); *Workman v. State*, 868 S.W.2d 705, 712–13 (Tenn.Crim.App.1993)(murder committed during defendant's escape from lawful custody of police officer following arrest). Our rationale is simple—"during" as used in the statute means "throughout the continuance of." The end of the escape marks the beginning of one's status as an "escapee." Although Odom was, assuredly, an "escapee," by no stretch can we say that the murder occurred during the defendant's escape from lawful confinement or during the defendant's escape from lawful custody or from a place of lawful confinement. When he committed the murder, Odom's escape was an accomplished fact—*a fait accompli*.

## B. DR. HUTSON'S TESTIMONY

■ In mitigation, John Hutson, Ph.D., a practicing clinical psychologist since 1975, testified for the defendant. He stated that he had interviewed the defendant on five occasions. From these meetings, Hutson gleaned that the defendant's first twelve years had been chaotic. He opined that the defendant harbored much anger toward parental figures in general and toward mothers in particular. He found it significant that the victim had addressed the defendant as "son."

Hutson related that the defendant had become progressively less hostile, defensive, sullen, and arrogant over the course of the evaluation process. Concerning the defendant's mental state, Hutson testified that the defendant "has never been diagnosed with any significant psychiatric disorder, such as would be likely to impair his ability to appreciate the wrongfulness of his actions, or to impair his ability to conform his behavior to the requirements of the law." Hutson opined further that the defendant "likely can be diagnosed as a personality disorder."

During the evaluation process, Hutson obtained a history from the defendant. As the defendant's counsel began to ask Hutson about some of the details of this history, the State objected on hearsay grounds. During a jury-out offer of proof, the defendant's counsel attempted to show the relevance of the personal history to the evaluation. The trial court sustained the hearsay objection to the testimony.

The defendant insists that the trial court erred in refusing to admit Hutson's testimony concerning the defendant's personal history. We agree with the Court of Criminal Appeals in its conclusion that the trial court did, indeed, err in this regard.

Tenn. Code Ann. § 39–13–204(c) controls, to a large extent, the admissibility of evidence at a capital sentencing proceeding; it provides:

In the sentencing proceeding, evidence may be presented as to any matter that

the court deems relevant to the punishment and may include, but not be limited to, the nature and circumstances of the crime; the defendant's character, background history, and physical condition; any evidence tending to establish or rebut the aggravating circumstances enumerated in subsection (i); and any evidence tending to establish or rebut any mitigating factors. Any such evidence which the court deems to have probative value on the issue of punishment may be received *regardless of its admissibility under the rules of evidence;* provided, that the defendant is accorded a fair opportunity to rebut any hearsay statements so admitted. However, this subsection shall not be construed to authorize the introduction of any evidence secured in violation of the constitution of the United States or the constitution of Tennessee.

Tenn. Code Ann. § 39–13–204(c)(Supp.1995)(emphasis added). This statute expressly exempts evidence adduced in capital sentencing proceedings from the usual evidentiary rules. Hence, evidence concerning a capital defendant's personal or psychological history would clearly be admissible under the above statute. The trial court's ruling in this regard was in blatant disregard of the statute's unmistakable language. We cannot find this error harmless under the standards of Tenn. R.App. P. 36(b).

### C. NONSTATUTORY MITIGATING CIRCUMSTANCES

Even though the defendant's expert witness was not permitted to testify in detail, he did testify generally about certain aspects of the defendant's social and psychological condition. A summary of that testimony appears earlier in this opinion. With this pertinent, but sparse, testimony as a predicate, the defendant submitted several written requests for instructions on nonstatutory mitigating circumstances. The trial court refused to accept any of the requested instructions for inclusion in those to be given to the jury, stating that the instructions to be given would adequately cover the requested matters. The defendant contends that this refusal constituted reversible error.

With the enactment of Tenn. Code Ann. § 39–13–204(e)(1), trial courts are now required to instruct the jury on any mitigating circumstances raised by the evidence at either the guilt or sentencing hearing, or both. In order to place the issue in perspective, however, a brief overview of the law as it existed previously may prove helpful. Before the Sentencing Reform Act of 1989, Tenn. Code Ann. § 39–2–203(e)(1982) governed the introduction of mitigating circumstances in capital sentencing proceedings. It provided:

(e) After closing arguments in the sentencing hearing, the trial judge shall include in his instructions for the jury to weigh and consider any mitigating circumstances and any of the statutory aggravating circumstances set forth in subsection (i) of this section which may be raised by the evidence at either the guilt or sentencing hearing, or both. These instructions and the manner of arriving at a sentence shall be given in the oral charge and in writing to the jury for its deliberations.

Subsection (j) of this statute complemented subsection (e) by specifying the mitigating circumstances:

(j) In arriving at the punishment the jury shall consider, as heretofore indicated, any mitigating circumstances which shall include, but not be limited to the following:

(1) The defendant has no significant history of prior criminal activity;

(2) The murder was committed while the defendant was under the influence of extreme mental or emotional disturbance;

(3) The victim was a participant in the defendant's conduct or consented to the act;

(4) The murder was committed under circumstances which the defendant reasonably believed to provide a moral justification for his conduct;

(5) The defendant was an accomplice in the murder committed by another person and the defendant's participation was relatively minor;

(6) The defendant acted under extreme duress or under the substantial domination of another person;

(7) The youth or advanced age of the defendant at the time of the crime; and (8) The capacity of the defendant to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law was substantially impaired as a result of mental disease or defect or intoxication which was insufficient to establish a defense to the crime but which substantially affected his judgment.

The case of *State v. Hartman* [6] was tried under the former provision as above quoted. In *Hartman*, we considered the question of nonstatutory mitigating circumstances in the context of their incorporation into the instructions to the jury. We found that there was no statutory requirement that nonstatutory mitigating factors be expressly instructed:

> [T]he only mandatory instructions with respect to mitigating circumstances are that those statutory circumstances which are raised by the evidence shall be expressly charged, and the jury must be told that they shall weigh and consider any other facts or circumstances that are raised by the evidence that they find to be mitigating circumstances, in making the determination of which circumstances, aggravating or mitigating, outweigh the other.

703 S.W.2d at 118; *accord State v. Cazes,* 875 S.W.2d 253, 268 (Tenn.1994); *State v. Smith,* 857 S.W.2d 1, 15 (Tenn.1993); *State v. Wright,* 756 S.W.2d 669, 674 (Tenn.1988); *State v. King,* 718 S.W.2d 241, 249 (Tenn. 1986).[7]

In 1989 the General Assembly enacted the Criminal Sentencing Reform Act of 1989. The section governing jury instructions in capital sentencing hearings was revised in an apparent response to *Hartman.* Tenn. Code Ann. § 39–13–203(e)(Supp.1989). Presently, the section as revised provides (for comparison, revisions are italicized):

After closing arguments in the sentencing hearing, the trial judge shall include in *the* instructions for the jury to weigh and consider any *of the* statutory aggravating circumstances set forth in subsection (i) which may be raised by the evidence at either the guilt or sentencing hearing, or both. The trial judge shall *also* include in the instructions for the jury to weigh and consider any mitigating circumstances raised by the evidence at either the guilt or sentencing hearing or both *which shall include, but not be limited to, those circumstances set forth in subsection (j). No distinction shall be made between mitigating circumstances as set forth in subsection (j) and those otherwise raised by the evidence which are specifically requested by either the state or the defense to be instructed to the jury.* These instructions and the manner of arriving at a sentence shall be given in the oral charge and in writing to the jury for its deliberations.[8]

 Proper resolution of this issue requires us to construe the statute: in doing so, our paramount responsibilities are to ascertain the legislative intent and to effectuate it. *State v. Bobo,* 727 S.W.2d 945, 952 (Tenn. 1987); *Long v. Stateline Sys., Inc.,* 738 S.W.2d 622, 623 (Tenn.1985). Initially, such intent is gathered from the natural, ordinary, and commonly accepted meaning of the language used in the statute itself. *Bobo,* 727 S.W.2d at 952; *Weaver v. Woods,* 594 S.W.2d 693, 695 (Tenn.1980).

 In construing a statute the Court must give effect to every word, phrase, clause, and sentence of the act to achieve the legislature's intent. *United Canners, Inc. v. King,* 696 S.W.2d 525, 527 (Tenn.1985); *City of Caryville v. Campbell County,* 660 S.W.2d 510, 512 (Tenn.App.1983). "Every word used [in a statute] is presumed to have meaning

---

**6.** 703 S.W.2d 106 (Tenn.1985), *cert. denied,* 478 U.S. 1010, 106 S.Ct. 3308, 92 L.Ed.2d 721 (1986).

**7.** *But see State v. Nichols,* 877 S.W.2d 722, 734–35 (Tenn.1994), where a crime committed under the old law was tried under the new law. The Court seemed to recognize that the language in the new statute required that a specific nonstatutory mitigating circumstance be presented for

consideration by the jury in an instruction. The defendant in that case, however, although presented with an opportunity to do so, did not specifically request that any such mitigating circumstance be charged to the jury.

**8.** Tenn. Code Ann. § 39–13–204(e)(1)(Supp.1995).

and purpose and should be given full effect if doing so does not violate the obvious intention of the Legislature." *Marsh v. Henderson*, 221 Tenn. 42, 424 S.W.2d 193, 196 (1968). Furthermore, a statute should be construed, if practicable, so that its component parts are consistent and reasonable; inconsistent phrases should be harmonized, where possible, so as to reach the legislative intent. *Id.* To construe the statute as not requiring specific instructions on nonstatutory mitigating circumstances would ignore the language referring to requested instructions in the next to last sentence of subsection (e)(1) and thereby contravene these basic rules of statutory construction.

■■■■■ Furthermore, when the legislature makes a substantial change in a statute that has been the subject of judicial construction, as was this statute in *Hartman*, 703 S.W.2d at 106, and the cases subsequent to it, the legislature is presumed to have been fully aware of the judicial construction and to have intended to alter the law. *Hamby v. McDaniel*, 559 S.W.2d 774, 776 (Tenn.1977). When the legislature amends a statute, it presumably does so either to change the law or to clarify it. In light of the language referring to instruction on nonstatutory mitigating circumstances and the fact that the meaning of the statute had been clearly set out in judicial decisions, it is reasonable to assume that the legislature meant to modify this Court's earlier holding on this issue.[9] To these principles we must add the rule of statutory construction that criminal statutes must be strictly construed in favor of the defendant. *Key v. State*, 563 S.W.2d 184, 188 (Tenn.1978).

■■■■■ In considering all of the above, we reach the inescapable conclusion that the legislature intended the trial court to instruct the jury on nonstatutory mitigating circumstances when raised by the evidence and specifically requested by either the State or the defendant. The trial court failed to heed this clear statutory mandate; this failure constitutes reversible error.

■■■■ In addition to his argument that his requested instructions are statutorily required, the defendant contends that the instructions are constitutionally required as well. We disagree with this contention. In *State v. Hutchison*, 898 S.W.2d 161, 173–74 (Tenn.1994), we held that "neither the United States Constitution nor the Tennessee Constitution requires the trial judge to read or submit non-statutory mitigating circumstances to the jury."

Two items remain: (1) to summarize the criteria for determining whether a circumstance is a mitigating one as a matter of law; and (2) to provide, to the extent possible, a measure of guidance to the trial court regarding instructions on nonstatutory mitigating circumstances. Obviously, whether a circumstance is "mitigating" as a matter of law depends in large measure upon the evidence presented. Far better that this classification be determined case by case rather than by resorting to a mechanical formula. Thus, our discussion must be general.

■■■■ The trial court should keep in mind the proviso of *Lockett v. Ohio* that "the Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kind of capital case, not be precluded from considering as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." 438 U.S. 586, 604, 98 S.Ct. 2954, 2964–65, 57 L.Ed.2d 973 (1978)(footnote

---

**9.** The Commission Comments discussing the 1989 amendments to § 39–13–204 do not, however, include a requirement to instruct nonstatutory mitigating circumstances among the changes the Comments note in the statute. On the other hand, David Raybin, who chaired the Penal Code Revision Subcommittee, interprets subsection (e)(1) as requiring that upon special request the judge instruct the jury on all mitigating factors raised by the proof:

> Under prior case law, the mitigating factors were thought of as "statutory" and "non-statu-

tory" in the sense that the latter had relatively no significance because the judge was not required to instruct the jury on such "nonstatutory" factors. This suspect practice has been clarified by T.C.A. § 39–13–203[sic](e) which requires that the judge instruct the jury on all mitigating factors raised by the proof. Obviously, a special request is required as to those factors which are mitigating in nature.

11 Raybin, *Tennessee Practice: Criminal Practice and Procedure*, § 32.45 (Supp.1995).

omitted). *A fortiori,* any evidence relevant to the issue of the defendant's culpability should be admitted as a mitigating circumstance during the penalty stage of a capital trial.[10] Once evidence has been admitted as relevant on the issue of whether mitigating circumstances exist, the jury has the freedom to give independent mitigating weight to those aspects of a defendant's character and record and to the circumstances of the offense as they see fit. The trial court is not free to, in effect, give it no weight by excluding such evidence from the jury's consideration. *Eddings v. Oklahoma,* 455 U.S. 104, 110, 114–15, 102 S.Ct. 869, 874, 876–77, 71 L.Ed.2d 1 (1982). The first role of the trial court, then, is to decide the threshold question whether evidence proffered in mitigation is "relevant."

■ Evidence of a defendant's background and character are considered relevant because defendants who come from a disadvantaged background or who have emotional and/or mental problems may be less culpable than defendants who have no such excuse. *Boyde v. California,* 494 U.S. 370, 382, 110 S.Ct. 1190, 1199, 108 L.Ed.2d 316 (1990); *Penry,* 492 U.S. at 319, 109 S.Ct. at 2947. Likewise, the circumstances of a particular offense are relevant to emphasize the differences in offenders and crimes. *Eddings,* 455 U.S. at 112, 102 S.Ct. at 875. In essence, these kinds of information are deemed relevant because "in capital cases the fundamental respect for humanity underlying the Eighth Amendment ... requires consideration of the *character and record of the individual offender* and the *circumstances of the particular offense* as a constitutionally indispensable part of the process of inflicting the penalty of death." *Woodson v. North Carolina,* 428 U.S. 280, 304, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976)(emphasis added).

■ Once the trial court has determined, using the above criteria, that a cir-

cumstance is a mitigating one, it must decide whether the circumstance has been "raised by the evidence." Embedded in Tennessee law is the rule that "the defendant has a right to have every issue of fact raised by the evidence and material to his defense submitted to the jury upon proper instructions by the judge." *State v. Thompson,* 519 S.W.2d 789, 792 (Tenn.1975). The trial court should encounter little difficulty in determining whether the circumstance has been raised by the evidence. Once the trial court decides that the proffered evidence is "mitigating" in nature and that it has been "raised by the evidence," it becomes a "mitigating circumstance" as a matter of law, and the trial court must include it in the instructions. The jury instructions are critical in enabling the jury to make a sentencing determination that is demonstrably reliable. To ensure this reliability, the jury must be given specific instructions on those circumstances offered by the capital defendant as justification for a sentence less than death. In this regard, the party desiring such an instruction must submit the requested instruction in writing to the trial court.

■ We come to that portion of the statute which provides: "No distinction shall be made between mitigating circumstances as set forth in subsection (j) and those otherwise raised by the evidence which are specifically requested ... to be instructed to the jury."[11] In our view, the legislature intended this language as a mandate to the trial court to place all mitigating circumstances—statutory and nonstatutory—on equal footing before the jury. If the statutory mitigating circumstances are submitted to the jury in writing as the statute requires, then any other mitigating circumstance raised by the evidence and proffered by a defendant as having mitigating value must, upon defendant's timely and proper request, also be submitted to the jury in writing. As a corol-

---

**10.** Conversely, evidence that does not bear on the defendant's character, prior record or the circumstances of the offense is not relevant and may be excluded by the trial court. *See Delo v. Lashley,* 507 U.S. 272, 113 S.Ct. 1222, 122 L.Ed.2d 620 (1993); *Lockett,* 438 U.S. at 605 n. 12, 98 S.Ct. at 2965 n. 12. Examples of evidence found to be relevant as mitigating circumstances

are: mental retardation, *Penry v. Lynaugh,* 492 U.S. 302, 328, 109 S.Ct. 2934, 2952, 106 L.Ed.2d 256 (1989); physical abuse as a child, *id.;* difficult family history, *Eddings,* 455 U.S. at 115, 102 S.Ct. at 877; and emotional disturbance, *id.*

**11.** Tenn. Code Ann. § 39–13–204(e)(1).

lary, we think the trial court is prohibited from revealing to the jury that a request was made, nor should the trial judge identify the part(ies) making the request. Only strict adherence to the letter and the spirit of the statute will permit the sentencing procedure to attain that degree of integrity that is legislatively intended.

■ We deem Tenn. Code Ann. § 39–13–204(e)(1) to be profoundly significant. It requires, in our view, that the instructions be drafted so that when they are considered by the jury, the statutory mitigating circumstances are indistinguishable from the nonstatutory mitigating circumstances.

The language of the requested instruction must not run afoul of constitutional mandates or established law. First, Article VI, section 9, of the Tennessee Constitution specifically provides that "[t]he Judges shall not charge juries with respect to matters of fact, but may state the testimony and declare the law." The purpose of this provision is to provide all litigants with an impartial trial judge and to preserve the jury's role as a finder-of-fact. These purposes are accomplished by preventing the trial court from influencing the jury's deliberations by "summing up" the evidence in the manner of English courts, commenting on the weight of the evidence, or instructing the jury concerning the factual conclusions to be drawn from the evidence. *Tyrus v. Kansas City, Ft. S. & M.R. Co.,* 114 Tenn. 579, 86 S.W. 1074, 1075 (1905); *Ivey v. Hodges,* 23 Tenn. (4 Hum.) 154, 155 (1843); *Sasser v. Averitt Express, Inc.,* 839 S.W.2d 422, 430–31 (Tenn.App.

1992); *Cleckner v. Dale,* 719 S.W.2d 535, 542 (Tenn.App.1986).

■ In this case, the defendant submitted several requests for special jury instructions on nonstatutory mitigating factors.[12] The language in some of these requested instructions implies that the trial court has made findings of fact, i.e., that the defendant had mental problems, that he had confessed, and that he was remorseful and sought help. We observe that a defendant's requested instructions on mitigating circumstances often constitute the theory of his case in the penalty phase; however, as we have stated, an instruction that implies to the jury that the trial court has found or believes that certain facts have been established is improper under our state constitution. Tenn. Const. art. VI, § 9; *Crain v. Brown,* 823 S.W.2d 187, 194 (Tenn.App.1991); *see also State v. Allen,* 692 S.W.2d 651, 654 (Tenn. Crim.App.1985).

### SUMMARY

1. The standard for appellate review of trial court rulings on suppression issues is the "preponderance of the evidence" standard.

2. This Court leaves to the General Assembly the decision whether to require the electronic recording of custodial interrogations.

3. The "heinous, atrocious, or cruel" aggravating circumstance is constitutional; however, the facts of record do not support

---

**12.** Defendant's special instruction request 1: "A mitigating circumstance is any circumstance which extenuates the gravity of the crime even though it is not a legal excuse for the crime."

Defendant's special instruction request 2: "You may consider the defendant's family background, history of abandonment, adoption, child abuse or any other circumstance of his life in deciding whether or not there are mitigating circumstances shown by the proof."

Defendant's special instruction request 3: "You may consider as a mitigating circumstance mental problems of the defendant, Richard Odom, even though they fall below the statutory aggravating requirement that the defendant was suffering from *extreme* mental or emotional disturbance."

Defendant's special instruction request 4: "You may consider as a mitigating circumstance evidence that the accused, Richard Odom, was abused both mentally and physically as a child."

Defendant's special instruction request 5: "In considering whether there are mitigating circumstances, you may consider that the defendant, Richard Odom, confessed to the crime, has shown remorse for his acts and asked for help with his problems."

Defendant's special instruction request 6: "Even though there has been proof by the defendant, Richard Odom, of mitigating circumstances which are not listed in the statute, these mitigating circumstances are no less worthy of your consideration than those listed in the statute."

the jury's finding of this aggravating circumstance.

4. The evidence does not support the jury's finding that the defendant committed the murder during an escape from lawful custody.

5. The trial court's refusal to permit a portion of Dr. Hutson's testimony constituted reversible error.

6. The "no distinction" language in Tenn. Code Ann. § 39–13–204(e) means exactly what it says.

Accordingly, the conviction upon the charge of first-degree murder (felony) is affirmed. The sentence of death by electrocution is vacated. The cause is remanded for a new sentencing hearing to be conducted in a manner consistent with this opinion.

REID and WHITE, JJ., concur.

ANDERSON, C.J., and DROWOTA, J., concur and dissent separately.

ANDERSON, Chief Justice, concurring and dissenting.

I fully concur in the majority's decision affirming the conviction in this case. I also agree with the majority that the trial court's refusal to admit into evidence as mitigation the testimony of Dr. John Hutson was error which requires a reversal and a remand for re-sentencing. However, I dissent from the majority's analysis of the constitutionality and sufficiency of the evidence to support the aggravating circumstance, Tenn. Code Ann. § 39–13–204(i)(5), as amended in 1989.

### AGGRAVATING CIRCUMSTANCE (I)(5)

As the majority acknowledges, in this case we are presented with our first opportunity to address the constitutionality of Tenn. Code Ann. § 39–13–204(i)(5), which, as amended in 1989, provides that the murder was "especially heinous, atrocious, or cruel in that it involved torture or serious physical abuse beyond that necessary to produce death." [1]

The defendant argues that the statutory language is unconstitutionally vague on its face. Relying on a decision of the Utah Supreme Court,[2] he urges this Court to construe "serious physical abuse" as physical abuse which is qualitatively and quantitatively different and more culpable than that necessary to accomplish the murder. Regardless of the construction of this language, he also claims that the evidence in this record does not support the aggravating circumstance.

The State responds that the statute is not vague on its face because it limits heinous, atrocious and cruel, to murders involving torture or serious physical abuse beyond that necessary to produce death. As the statute is constitutional on its face, the State contends that no further construction is required.

Resolution of this issue is guided by well-settled constitutional principles. The United States Supreme Court held in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), that the death penalty may not be imposed under sentencing procedures that create a substantial risk that the punishment will be inflicted in an arbitrary and capricious manner. Therefore, if a State wishes to authorize capital punishment, it is required by the federal constitution to tailor and apply its law in a manner that avoids the arbitrary and capricious infliction of the death penalty. *Godfrey v. Georgia*, 446 U.S. 420, 428, 100 S.Ct. 1759, 1764, 64 L.Ed.2d 398 (1980).

This constitutional responsibility requires states, as a first step, to adopt procedures to narrow the class of persons eligible for the death penalty. *Zant v. Stephens*, 462 U.S. 862, 877, 103 S.Ct. 2733, 2742, 77 L.Ed.2d 235 (1983). Narrowing may be accomplished either by providing restrictive definitions of first-degree or capital murder or by utilizing aggravating circumstances at the sentencing hearing. *Lowenfield v. Phelps*, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988). In

---

**1.** Prior to the amendment in 1989, the statute provided "that the murder was especially heinous, atrocious, or cruel in that it involved torture or depravity of mind."

**2.** *State v. Tuttle,* 780 P.2d 1203,1217 (Utah 1989).

Tennessee, narrowing is accomplished by use of aggravating circumstances. *State v. Middlebrooks*, 840 S.W.2d 317 (Tenn.1992).

Once a method of narrowing is chosen, the standards employed must be "clear and objective" and provide "specific and detailed" guidance which both channels the sentencer's discretion and makes rationally reviewable the process for imposing a sentence of death. *Godfrey v. Georgia*, 446 U.S. at 428, 100 S.Ct. at 1765. Indeed, the United States Supreme Court has recognized that a death penalty "system could have standards so vague that they would fail adequately to channel the sentencing decision patterns of juries with the result that a pattern of arbitrary and capricious sentencing like that found unconstitutional in *Furman* could occur." *Gregg v. Georgia*, 428 U.S. 153, 195, n. 46, 96 S.Ct. 2909, 2935, n. 46, 49 L.Ed.2d 859 (1976). Therefore, in Tennessee, aggravating circumstances, which serve as standards to guide the sentencing jury's discretion, must be sufficiently clear, objective, specific, and detailed to prevent the arbitrary and capricious imposition of the death penalty. In this case, the defendant argues that the statutory aggravating circumstance, that the murder was especially heinous, atrocious, or cruel in that it involved torture or serious physical abuse beyond that necessary to produce death, without further judicial construction, is unconstitutionally vague because it fails to inform the jury of what finding is necessary for imposition of the death penalty, and therefore leaves juries, and appellate courts with the type of open-ended discretion held invalid in *Furman v. Georgia, supra*. I disagree. Two cases decided by the United States Supreme Court provide guidance on this issue.

In *Godfrey v. Georgia, supra*, a Georgia jury was instructed in the language of the statutory aggravating circumstance—"the offense was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim,"—but its verdict only recited that the murder was "outrageously or wantonly vile, horrible or inhuman." *Id.*, at 422, 100 S.Ct. at 1762. The Georgia Supreme Court affirmed the jury's verdict, finding only that the language was unobjectionable,

and thus failed to rule whether the offense involved torture or an aggravated battery to the victim. *Id.*, at 426–27, 100 S.Ct. at 1763–64. The U.S. Supreme Court reversed the death sentence stating:

> In the case before us, the Georgia Supreme Court has affirmed a sentence of death based upon no more than a finding that the offense was 'outrageously or wantonly vile, horrible and inhuman.' There is nothing in these few words, **standing alone,** that implies any inherent restraint on the arbitrary and capricious infliction of the death sentence. A person of ordinary sensibility could fairly characterize almost every murder as 'outrageously or wantonly vile, horrible and inhuman.'

*Id.*, 446 U.S. at 428–29, 100 S.Ct. at 1764 (footnote omitted) (emphasis added).

More recently, in *Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988), the United States Supreme Court considered a vagueness challenge to an Oklahoma statutory aggravating circumstance. There, the jury imposed the death penalty upon a finding of two aggravating circumstances, one of which was the murder was "especially heinous, atrocious, or cruel." Initially, the Court considered whether or not the statutory language, on its face, provided sufficient guidance to the jury. The Court concluded that, as in *Godfrey v. Georgia*, the bare language of the Oklahoma statute provided *no guidance to the sentencing jury*, because "an ordinary person could honestly believe that every unjustified, intentional taking of human life is "especially heinous." " *Maynard v. Cartwright*, 486 U.S. at 363, 108 S.Ct. at 1859. Moreover, the conclusion of the Oklahoma court that the evidence "adequately supported the jury's finding", did nothing according to the United States Supreme Court, "to cure the unfettered discretion of the jury and to satisfy the commands of the Eighth Amendment." *Id.* Although declining to delineate an *exclusive* limiting construction of the heinous, atrocious, or cruel aggravating circumstance, the Court implicitly approved as constitutionally acceptable a limiting construction which requires "some kind of torture or serious physical abuse." *Id.*

Accordingly, under *Maynard v. Cartwright,* Tenn. Code Ann. § 39–13–204(I)(5), which, as amended in 1989, provides that the murder was "especially heinous, atrocious, or cruel in that it involved torture or serious physical abuse beyond that necessary to produce death" is constitutionally acceptable. To base imposition of the death penalty upon this aggravating circumstance, the jury must find either torture, which has been defined in this State "as the infliction of severe physical or mental pain upon the victim while he or she remains alive and conscious,"[3] or "serious physical abuse beyond that necessary to produce death." The findings required by this statutory aggravating circumstance are both clear and specific. The aggravating circumstance channels and limits the jury's discretion and sufficiently eliminates the risk of arbitrary and capricious imposition of the death penalty. Therefore, in my opinion, no further judicial construction is needed, and the definitions suggested by the majority are superfluous.

Moreover, I disagree with the majority's conclusion that the evidence in this record is insufficient to support the aggravating circumstance.[4] In this case, the evidence, including the defendant's own statement, established that the 78 year-old victim was accosted and pushed into her car during a robbery attempt. Once inside the car, the defendant pulled out a knife and "cut" the victim. In pleading with him to stop, the victim addressed the defendant as "son." The defendant became very angry, replied "I'll give you a son," and then, in apparent retaliation for the victim's use of the term "son," raped her. When asked if the victim was alive when he raped her, the defendant said he was "quite sure she was alive because she told me she had never had sex before." Although the defendant denied any recollection of stabbing the victim, the medical examiner testified that the victim had suffered multiple stab wounds to her body, including penetrating wounds to the heart, lungs and liver. These wounds caused internal bleeding, and ultimately death, but according to the medical examiner, would not have resulted in instantaneous death. The medical examiner also noted defensive wounds on the victim's hands, and a tear in the victim's vaginal wall.

As previously stated, "torture" was defined in *State v. Williams, supra,* as "the infliction of severe physical or mental pain upon the victim while he or she remains alive and conscious." In this case, the defendant inflicted severe physical and mental pain upon the victim while she remained alive and conscious. The victim was alive when violently accosted, she pleaded with the defendant for mercy, but instead she no doubt experienced terror, when the defendant raped her as punishment for her use of the term "son." According to the defendant's own statement, she remained alive and conscious throughout the rape. Defensive stab wounds to her hands indicate that she struggled for survival as the defendant inflicted multiple penetrating stab wounds, which caused internal bleeding, and pain, but which did not cause immediate death. Though always utterly reprehensible, rape is not always torture. However, the facts and circumstances of this case, *including* the rape of the victim, in my opinion, establish torture as that term was defined in *State v. Williams, supra.* Compare *State v. Cazes,* 875 S.W.2d 253, 271 (Tenn.1994); *State v. Porterfield,* 746 S.W.2d 441, 449–50 (Tenn.1988). Therefore, I dissent from the majority's analysis of the constitutionality and sufficiency of the evidence to support the aggravating circumstance. In the result reached, and in all other aspects of the majority decision, I concur.

I am authorized to state that Justice DROWOTA concurs in this Concurring and Dissenting Opinion.

DROWOTA, J., concurs.

---

3. *State v. Williams,* 690 S.W.2d 517 (Tenn.1985).

4. Because a new sentencing hearing is required in this case, the question of the sufficiency of the evidence to support the aggravating circumstance is moot. *See State v. Harris & Thompson,* 919 S.W.2d 323 (Tenn.1996)(Discussing resentencing hearings). Since the majority addressed the issue, however, I must express my disagreement with the majority's conclusion that the evidence is not sufficient.

*JUDGMENT*

This cause came on to be heard upon briefs, argument of counsel, and upon the record on appeal from the Criminal Court of Shelby County. Upon consideration thereof, this Court is of the opinion that the trial court committed reversible error in refusing to permit the defendant's expert witness to testify in detail on mitigating circumstances and in refusing to instruct the jury on non-statutory mitigating circumstances raised by the evidence and specifically requested.

In accordance with the opinion filed herein, it is, therefore, ORDERED AND ADJUDGED by this Court that the judgment of conviction is affirmed; the sentence of death is vacated; and the cause is remanded for a new sentencing hearing.

Costs of appeal are taxed against the State.