# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### JUNE SESSION, 1997

FILED

July 28, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 02C01-9702-CC-00085 |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | HENRY COUNTY |
| VS. | ) | |
| | ) | HON. C. CREED MCGINLEY |
| WILLIAM D. BUCY, II, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Certified Question-Stop and Search) |

## ON APPEAL FROM THE JUDGMENT OF THE
## CIRCUIT COURT OF HENRY COUNTY

FOR THE APPELLANT:

MATTHEW M. MADDOX
105 East Main Street
P.O. Box 430
Huntingdon, TN 38344

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

KENNETH W. RUCKER
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243

ROBERT "GUS" RADFORD
District Attorney General
P.O. Box 686
Huntingdon, TN 38344

OPINION FILED _____

AFFIRMED

DAVID H. WELLES, JUDGE

# OPINION

This appeal presents a certified question of law pursuant to Rule 37(b)(2)(iv) of the Tennessee Rules of Criminal Procedure. The Defendant pleaded guilty to misdemeanor possession of drugs and possession of a prohibited weapon. With the consent of the trial court, he reserved a certified question of law that is dispositive of the case. The certified question arose from the trial court's denial of a motion to suppress evidence obtained from the Defendant during a search conducted by a police officer. We affirm the judgment of the trial court.

Most of the relevant facts are not in serious dispute. In the early afternoon on January 31, 1996, the Paris, Tennessee Police Department received an anonymous call reporting that there was a possible burglary in progress at a house located on the corner of Carter Road and Betty Street within the city limits of Paris. The caller reported that two individuals were seen using a chair to climb in a window of the residence. At least three policemen promptly arrived at that general location in response to the call. One of the officers saw a chair under a window of one of the houses at or near the intersection. As another officer approached the rear of the house, the Defendant ran out the back door of the house and, according to the officer, "hollered back to the back door to come on, the cops are out here." The Defendant entered the passenger side door of a pickup truck and reached over and started the truck. The police officer opened the driver's side door of the truck, reached in and turned the ignition off, and with his weapon drawn, ordered the Defendant out of the truck. The officer directed

both the Defendant and another individual who also had exited the house to place their hands on a nearby picnic table. The officer testified that he then "frisked" the Defendant and found in his jacket pocket a switchblade knife, a pill bottle and a bag of marijuana.

After investigating further, the policeman determined that there had not in fact been a burglary. Apparently a teenage occupant of the home had forgotten her house key and she and a friend had therefore entered the house through a bedroom window. The Defendant and his companion were apparently at the house to visit the teenage girls.

The Defendant was subsequently charged with possession of drugs and possession of an illegal switchblade knife. He filed a motion to suppress the evidence which was obtained from his pocket based on his argument that they were obtained as a result of an unlawful search. After conducting an evidentiary hearing, the trial court overruled his motion. The Defendant subsequently entered pleas of guilty but reserved as a certified question for appeal the issue of the legality of the search.

The Defendant argues that the evidence should have been suppressed because (1) The officer had no right to stop and frisk him as he ran from the house; (2) that the evidence preponderates against the trial court's finding that the "frisk" occurred before the officers determined that no burglary had in fact taken place; and (3) that the search conducted by the officer exceeded the type of search permissible in conjunction with a Terry stop.

The trial court found that based on these facts and circumstances, the stop of the Defendant was not only warranted or justified, but that the police officers would have been derelict in their duty if they had not responded as they did. The court further found that the search took place as soon as the officer got the Defendant out of the truck and that the search was clearly reasonable and justified by the concern for the safety of the officers.

The Defendant argues that the evidence contained in the record preponderates against the findings of the trial court because the trial court should have credited the testimony of the Defendant's "disinterested" witnesses rather than the police officers.

On suppression issues, questions of credibility of the witnesses, along with the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as trier of fact. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence. Id. A trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise. Id. As noted by the trial judge, there were conflicts in the testimony at the suppression hearing. The trial judge resolved these conflicts in favor of the State. The evidence does not preponderate against the findings of the trial court.

The law is well settled in Tennessee that an investigative detention requires only a showing of reasonable suspicion rather than probable cause.

See, e.g., State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992). Reasonable suspicion must be based on specific and articulable facts indicating that a criminal offense has been or is about to be committed. Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct.1868, 1880, 20 L.Ed2d 889, 906 (1968). In evaluating whether reasonable suspicion is based on specific and articulable facts, we must consider the totality of the circumstances, including the personal observations of the police officer, information obtained from other officers or agencies, information obtained from citizens and the pattern of operation of certain offenders. Watkins, 827 S.W.2d at 294 (citations omitted). We must also consider the rational inferences and deductions that a trained police officer may draw from the circumstances. Id. In Terry, the Supreme Court stated that a frisk based on reasonable suspicion "must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others near by." 392 U.S. at 26, 88 S.Ct. at 1862, 20 L.Ed2d at 908.

In the case sub judice, we agree with the trial court's conclusion that not only was the detention of the Defendant justified, but also that the officer would have been derelict in his duties not to respond as he did under these facts. Even though it was an anonymous phone call which directed the police officers to the area, the detention of the Defendant was fully justified by what the officers observed and heard once they got there. See State v. Hullum, 664 S.W.2d 314, 317 (Tenn. Crim. App. 1983). Moreover, the trial court resolved conflicting testimony regarding the timing of the pat-down search in favor of the State. Thus, the officer clearly possessed reasonable suspicion when he conducted the search.

-5-

The trial court found that on these facts the officer was justified in conducting the "pat-down" or "frisk" within the <u>Terry</u> limits. The judge stated, "this is a classic case, not only where the search is permissible, but it absolutely must take place under this type of circumstances. With the finding of contraband in the course of this pat-down, certainly there's no unreasonable search here. There is no violation. The court finds that the search will stand." We agree.

The judgment of the trial court is affirmed.

_____
DAVID H. WELLES, JUDGE

CONCUR:

_____
PAUL G. SUMMERS, JUDGE

_____
JOE G. RILEY, JUDGE