IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 13, 2016


**JORDAN MANSFIELD LOOPER v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2011-D-3737     J. Randall Wyatt, Jr., Judge**

_____

**No. M2015-01018-CCA-R3-PC – Filed March 3, 2016**
_____


Petitioner, Jordan Mansfield Looper, pleaded guilty to attempted second degree murder, and the trial court sentenced him to twelve years in confinement. *State v. Jordan Mansfield Looper*, No. M2012-02523-CCA-R3-CD, 2013 WL 4647629, at *1 (Tenn. Crim. App. Aug. 26, 2013). Petitioner unsuccessfully appealed his twelve-year sentence. *Id.* Petitioner subsequently filed a petition for post-conviction relief, and he now appeals the post-conviction court's denial of relief. Petitioner argues that he received ineffective assistance of counsel when his trial counsel "abandoned" his case and when trial counsel told him that he would receive probation during sentencing. Petitioner further argues that these errors, in addition to his grief after viewing pictures of the victim's injuries for the first time, resulted in his guilty plea not being knowingly and voluntarily entered. Following our thorough review of the record, the parties' briefs, and the applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROGER A. PAGE, SP. J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J., and TIMOTHY L. EASTER, J., joined.

Sunny M. Eaton, Nashville, Tennessee, for the Appellant, Jordan Mansfield Looper.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Counsel; Glenn R. Funk, District Attorney General; and Christopher Ricardo Buford, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### I.  Facts from Guilty Plea Submission Hearing

This court's opinion from petitioner's direct appeal explains that the State presented the following factual basis for petitioner's guilty plea:

> [O]n September 13, 2011[,] at approximately 12:59 . . . in the afternoon, Officer Boone with the Nashville Metropolitan Police Department responded to 1 Dell Parkway in reference to a hit and run involving injury.
>
> Upon the officer's arriving[,] Ms. Whitney Wiser was being prepared for transport and advised medical personnel there that [petitioner] was the person who ran over her with his black SUV.  There was also a witness at the scene, Mr. Edward Wilson[,] who also saw the black SUV speed out of the parking [a]isle and intentionally run the victim over.  Mr. Wilson gave a description [that] was later aired out over the airways for [petitioner] and the vehicle.
>
> Ms. Wiser was transported to Vanderbilt Hospital.  She had some serious injuries and was listed in critical condition with numerous scrapes and abrasions from the car and the asphalt[,] and she had . . . broken bones in her spine and some broken ribs.
>
> [Petitioner] was later stopped in Wilson county by a Tennessee Highway Patrolman, Trooper Tracy Wright[,] and . . . [petitioner] later admitted that he was driving the vehicle that ran over Ms. Wiser in a statement to Detective Laura Thomas and Detective Mike Bennett of the Nashville Police Department . . . .

*Id.*

### II.  Facts from Post-Conviction Hearing

Petitioner testified that he was originally charged with attempted first degree murder but that he pleaded guilty to attempted second degree murder on September 12, 2012.  Petitioner claimed that although his actions resulted in harm to the victim, he was innocent of attempted second degree murder because he never intended to harm the victim.  Petitioner explained that his trial was set to begin on September 12, 2012, but that he did not believe that his case was ready to be tried because there were favorable witnesses that his trial counsel had not subpoenaed.  Petitioner wanted the following

-2-

witnesses to testify at his trial: his employer, the arresting officer, a psychiatrist, an expert in the field of side effects from drugs and alcohol, and an expert in accident reconstruction. However, as far as he knew, his trial counsel had failed to subpoena any of these witnesses. The only witness that trial counsel planned to call on petitioner's behalf was petitioner's mother. Petitioner also wanted trial counsel to present cellular telephone records and text messages between him and the victim at trial; however, to his knowledge, trial counsel was not planning to do so. Therefore, on September 12, petitioner felt he was going to trial without the necessary witnesses or evidence to mount a defense. Petitioner stated that the day before trial, he and trial counsel only discussed jury selection and the victim's receiving a driving under the influence charge a month after the incident.

Petitioner asserted that when discussing a plea bargain, his attorney told him that he would receive an eight-year sentence to be served at thirty percent with one year in confinement and the rest to be served on probation. Petitioner said that he planned to proceed to trial if he did not receive a plea offer of either probation or split confinement. Petitioner explained that on the morning of September 12, prior to his trial, he saw pictures of the injured victim for the first time. The pictures made him "feel sick" because he knew that his "actions caused it." Petitioner described his emotional state as "in shock," "hurt," and "like a knife was in [his] stomach." Petitioner said that he did not feel that he was capable of making decisions in that state; however, it was ten to fifteen minutes after viewing the pictures that he had to decide whether to accept the plea agreement or proceed to trial. In fact, a couple of days after petitioner pleaded guilty, petitioner contacted trial counsel about retracting the plea. Petitioner said that he did not remember what the judge said to him during the plea colloquy because he felt "lost." Petitioner said that trial counsel explained the plea petition to him but that he did not read the petition before signing it. Petitioner asserted that trial counsel told him that he would be receiving probation.

During cross-examination, petitioner denied reviewing the plea petition with trial counsel and was unable to recall telling the trial court that he had reviewed the form with trial counsel. Petitioner explained that he did not remember what evidence was presented at his preliminary hearing because he was "detoxing" from using Xanax. Petitioner also explained that while in jail prior to entering his guilty plea, he began taking Zoloft due to depression but that he still felt depressed even after taking the medication. However, petitioner conceded that although he was suffering from depression, he was still aware of what was occurring in his case. Petitioner asserted that during the plea colloquy, his mind was on the victim and the pictures that he had seen rather than the proceedings.

Cindy Looper, petitioner's mother, testified that she was the first person that petitioner spoke to after harming the victim and that she had been planning to testify

about the conversation at petitioner's September 12 trial. Ms. Looper asserted that even though she was planning to testify, trial counsel failed to prepare her for her testimony in any way. Ms. Looper explained that when petitioner accepted his plea agreement, her understanding from speaking with trial counsel was that he was receiving ten to twelve years on probation. During cross-examination, Ms. Looper agreed that she knew her son was pleading guilty to a lesser charge than that for which he had been charged.

Joe Looper, petitioner's father, testified that he recommended to petitioner approximately fifteen different witnesses but that to his knowledge, none of those witnesses had been subpoenaed for petitioner's trial. Mr. Looper explained that when he arrived at the courthouse on September 12 and realized that none of the suggested witnesses were present, he did not believe that the case was ready for trial. Mr. Looper asserted that trial counsel had told petitioner's family that because petitioner had never been in trouble before, he would be sentenced to ten years on probation. During cross-examination, Mr. Looper stated that although he remembered petitioner having a conversation with the court during the plea colloquy, he "didn't really pay that much attention to it." Mr. Looper agreed that he knew a sentencing hearing would occur but asserted that he believed petitioner would receive ten years on probation.

Trial counsel testified that he had been an attorney for fifteen years at the time petitioner entered his plea agreement and that he had handled "many" trials, fifteen to twenty of which were homicide cases. Trial counsel explained that in preparing for petitioner's trial, he met with petitioner "easily more than ten times" to discuss the case. Trial counsel stated that petitioner was "an intelligent young man" and that he was able to understand and participate in all of their discussions regarding the case. Regarding the use of expert witnesses, trial counsel said that he and petitioner had discussed the necessity of an expert in accident reconstruction and that after he evaluated the evidence, he decided that an expert witness was unnecessary because he could glean the same information himself or from the other witnesses. Trial counsel explained that the witness list that petitioner and his family created contained witnesses that were appropriate for a bond or sentencing hearing but that they could not testify about the facts of the case at trial. Trial counsel testified that on the day of trial, he discussed the plea offer with petitioner and that petitioner "definitely" understood what was occurring. Trial counsel denied ever promising that petitioner would be sentenced to ten years on probation. Trial counsel explained that he told petitioner and his family that ten years on probation "was what [they] were aiming for, that the best case scenario was a probation sentence." Trial counsel stated that petitioner "appeared" to understand the plea colloquy with the trial court, especially given the conversation he had with petitioner immediately before the colloquy. Trial counsel and petitioner also discussed which witnesses the defense should present at the sentencing hearing and the possible witnesses that the State would call. Regarding the photographs of the victim that petitioner saw on the morning he entered his

guilty plea, trial counsel said that he thought petitioner had viewed the photographs before but that he was not sure. He specifically recalled reviewing photographs with petitioner, and petitioner's turning his head to the side due to the photographs' contents. Trial counsel specifically stated, "I told him what was in the photographs[] if he didn't see them." Trial counsel asserted that petitioner was not threatened or promised anything in exchange for his guilty plea and that nothing hindered petitioner's ability to understand what occurred during the guilty plea colloquy and sentencing hearing.

During cross-examination, trial counsel conceded that he was not a crime scene reconstruction expert, that he never consulted an independent crime scene reconstruction expert in this case, and that it was likely, given the nature of petitioner's case, that the trial court would have approved funds to hire an expert. Trial counsel also conceded that he was unable to predict what experts in crime scene reconstruction, pharmacology, or trauma would have been able to offer or add to petitioner's defense. Trial counsel agreed that although he had talked to the state trooper who had pulled petitioner over on the day of the crime, he did not subpoena the state trooper to testify at petitioner's trial, even though the state trooper was the first person to interact with petitioner after the incident occurred. Trial counsel stated that he knew there was "a decent chance" that petitioner would receive a sentence to be served in confinement but that he hoped that trial court would offer "split confinement or probation."

Following this testimony, the post-conviction court specifically credited trial counsel's testimony that he had advised petitioner regarding the possible sentences that the trial court could impose. Regarding trial counsel's preparation and communication with petitioner, the post-conviction court again credited trial counsel's testimony and found that trial counsel had met with petitioner multiple times and reviewed the State's evidence and discovery with petitioner, including the photographs of the victim. The court also found that trial counsel had adequately prepared for trial. The court stated, "The court finds that [trial counsel] evaluated the State's evidence and possible defense theories and strategies, including the need for expert witnesses, and advised the Petitioner as best he could throughout the process." The court found that petitioner had not received the ineffective assistance of counsel.

Regarding whether petitioner's plea was knowingly and voluntarily entered, the court found that it had "thoroughly advised" petitioner that as part of his guilty plea, the trial court would conduct a sentencing hearing and would sentence him to between eight and twelve years and that the sentence could be served in confinement. Petitioner indicated to the court that he understood the trial court's explanation and that he did not have any questions about the process. The post-conviction court also discredited petitioner's assertion that he was overwrought with emotion during the plea colloquy from viewing pictures of the victim for the first time. The court found that petitioner had

failed to prove that his plea was not knowingly and voluntarily entered. Petitioner now appeals the post-conviction court's determination.

## III. Analysis

On appeal, Petitioner argues that he received ineffective assistance of counsel when his trial counsel "abandoned" his case and when trial counsel told him that he would receive probation during sentencing. Petitioner further argues that these errors, in addition to his grief after viewing pictures of the victim's injuries for the first time, resulted in his guilty plea not being knowingly and voluntarily entered. The State responds that the post-conviction court properly denied the petition for post-conviction relief. We agree with the State.

To obtain relief in a post-conviction proceeding, a petitioner must demonstrate that his or her "conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010) (quoting *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009)).

Appellate courts do not reassess the post-conviction court's determination of the credibility of witnesses. *Dellinger v. State*, 279 S.W.3d 282, 292 (Tenn. 2009) (citing *R.D.S. v. State*, 245 S.W.3d 356, 362 (Tenn. 2008)). Assessing the credibility of witnesses is a matter entrusted to the post-conviction judge as the trier of fact. *R.D.S.*, 245 S.W.3d at 362 (quoting *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). The post-conviction court's findings of fact are conclusive on appeal unless the preponderance of the evidence is otherwise. *Berry v. State*, 366 S.W.3d 160, 169 (Tenn. Crim. App. 2011) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App.1997)). However, conclusions of law receive no presumption of correctness on appeal. *Id.* (citing *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001)). As a mixed question of law and fact, this court's review of petitioner's ineffective assistance of counsel claims is de novo with no presumption of correctness. *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011) (citations omitted).

The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and article I, section 9 of the Tennessee Constitution require that a criminal defendant receive effective assistance of counsel. *Cauthern v. State*, 145 S.W.3d 571, 598 (Tenn. Crim. App. 2004) (citing *Baxter v. Rose*,

523 S.W.2d 930 (Tenn. 1975)). When a petitioner claims that he received ineffective assistance of counsel, he must demonstrate both that his lawyer's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Finch v. State*, 226 S.W.3d 307, 315 (Tenn. 2007) (citation omitted). It follows that if this court holds that either prong is not met, we are not compelled to consider the other prong. *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004).

To prove that counsel's performance was deficient, petitioner must establish that his attorney's conduct fell below an objective standard of "'reasonableness under prevailing professional norms.'" *Finch*, 226 S.W.3d at 315 (quoting *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006)). As our supreme court held:

> "[T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence . . . . Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations."

*Id.* at 315-16 (quoting *Baxter*, 523 S.W.2d at 934-35). On appellate review of trial counsel's performance, this court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689).

To prove that petitioner suffered prejudice as a result of counsel's deficient performance, he "must establish a reasonable probability that but for counsel's errors the result of the proceeding would have been different." *Vaughn*, 202 S.W.3d at 116 (citing *Strickland*, 466 U.S. at 694). "A 'reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). As such, petitioner must establish that his attorney's deficient performance was of such magnitude that he was deprived of a fair trial and that the reliability of the outcome was called into question. *Finch*, 226 S.W.3d at 316 (citing *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999)).

Petitioner argues that trial counsel was deficient in his performance, thereby resulting in his involuntary and unknowing guilty plea. First, petitioner argues that trial counsel had "abandoned" his case and was unprepared for trial. However, trial counsel

testified that in preparing for petitioner's trial, he met with petitioner "easily more than ten times" to discuss the case. Trial counsel said that he and petitioner had discussed the necessity of an expert in accident reconstruction and that after he evaluated the evidence, he decided that an expert witness was unnecessary. Trial counsel explained that the witness list that petitioner and his family created contained witnesses that were appropriate for a bond or sentencing hearing but that they could not testify about the facts of the case at trial. The trial court concluded that trial counsel had adequately prepared for trial. The trial court specifically credited trial counsel's testimony and found that trial counsel had met with petitioner multiple times and reviewed the State's evidence and discovery with petitioner. The court stated, "The court finds that [trial counsel] evaluated the State's evidence and possible defense theories and strategies, including the need for expert witnesses, and advised the Petitioner as best he could throughout the process." As stated above, appellate courts do not reassess a post-conviction court's determination regarding the credibility of witnesses. *Dellinger*, 279 S.W.3d at 292 (citing *R.D.S.*, 245 S.W.3d at 362). We conclude that the trial court did not err in denying relief on this issue.

Petitioner also argues that trial counsel was ineffective when he told petitioner that he would receive probation during sentencing. However, trial counsel denied promising petitioner a probationary sentence. Trial counsel testified that while he hoped that petitioner would receive probation or a split confinement sentence, he informed petitioner that a sentence to be served in confinement was possible. The trial court specifically credited trial counsel's testimony that he had advised petitioner regarding the possible sentences that the trial court could impose, and we will not re-evaluate this credibility determination on appeal. *Dellinger*, 279 S.W.3d at 292 (citing *R.D.S.*, 245 S.W.3d at 362). The trial court did not err in denying relief on this issue.

Petitioner also argues that his guilty pleas were not entered knowingly, voluntarily, and intelligently due to his trial counsel's ineffective assistance and due to his distraught emotional state after viewing pictures of the injured victim for the first time. A guilty plea must be entered knowingly, voluntarily, and intelligently. *Lane*, 316 S.W.3d at 562; *see North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969). If a plea is not knowingly, voluntarily, and intelligently entered, the guilty plea is void because petitioner has been denied due process. *Lane*, 316 S.W.3d at 562 (citing *Boykin*, 395 U.S. at 243 n.5). To make such a determination, the court must examine "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Id.* Courts should consider the following factors when ascertaining the validity of a guilty plea:

(1) the defendant's relative intelligence; (2) the defendant's familiarity with criminal proceedings; (3) the competency of counsel and the defendant's

opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial.

*Id.* (quoting *Howell v. State*, 185 S.W.3d 319, 330-31 (Tenn. 2006)). "[A] plea is not voluntary if it results from '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats.'" *Id.* at 563 (quoting *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993)). Thus, the transcript of the plea colloquy must affirmatively show that a defendant's decision to plead guilty was both voluntary and knowledgeable. *Id.* The trial court must ensure that the defendant entered a knowing and intelligent plea by thoroughly "'canvass[ing] the matter with the accused to make sure that he has a full understanding of what the plea connotes and of its consequences.'" *Id.* (quoting *Blankenship*, 858 S.W.2d at 904).

Petitioner does not contest that the trial court properly conducted his guilty plea submission hearing but, rather, states that his pleas were involuntary because he was suffering from emotional turmoil and because his trial counsel was ineffective. As stated above, petitioner has failed to prove that trial counsel was ineffective, and the post-conviction court specifically discredited petitioner's assertion that he was overwrought with emotion during the plea colloquy from viewing pictures of the victim for the first time. Furthermore, trial counsel testified that while he could not testify that petitioner had seen those specific pictures of the victim, he specifically recalled reviewing photographs with petitioner, and petitioner's turning his head to the side due to the photographs' contents. Trial counsel specifically stated, "I told him what was in the photographs[] if he didn't see them." Based on the record and the credibility determinations of the post-conviction court, petitioner has failed to prove that his guilty pleas were not entered knowingly, voluntarily, and intelligently.

## CONCLUSION

Based on the parties' briefs, the record, and the applicable law, we affirm the judgment of the post-conviction court.

_____
ROGER A. PAGE, SPECIAL JUDGE

-9-