IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 17, 2017

**STATE OF TENNESSEE v. ANTONIO SMITH**

**Appeal from the Criminal Court for Knox County**
**No. 105486A     Steven Wayne Sword, Judge**

_____

**No. E2016-02130-CCA-R3-CD**

_____


Defendant, Antonio Smith, was indicted by the Knox County Grand Jury in a multi-count presentment with one count of sale of heroin in a drug-free zone, one count of delivery of heroin in a drug-free zone, three counts of possession of heroin with the intent to sell in a drug-free zone, three counts of possession of heroin with the intent to deliver in a drug-free zone, one count of possession of marijuana, two counts of possession of a firearm with the intent to go armed during the commission of a dangerous felony, two counts of felon in possession of a firearm with intent to go armed during the commission of a dangerous felony, three counts of felon in possession of a firearm, and four counts of criminal gang enhancement. A codefendant, Heather Montgomery, was also indicted for several offenses. The trial court dismissed the criminal gang enhancement counts prior to trial after the statute was found unconstitutional by this court in *State v. Bonds*, 502 S.W.3d 118 (Tenn. Crim. App. 2016). Following a jury trial, Defendant was acquitted of the two counts of felon in possession of a firearm with intent to go armed during the commission of a dangerous felony but found guilty of all other counts as charged. The trial court merged several of the convictions and sentenced Defendant as a career offender to an effective sentence of 72 years. After the denial of a motion for new trial, Defendant initiated this appeal. On appeal Defendant challenges the denial of a pretrial motion to suppress evidence and the sufficiency of the evidence. Having carefully reviewed the record before us and the briefs of the parties, we find no error and affirm the judgments of the trial court.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

J. Liddell Kirk, Knoxville, Tennessee, for the appellant, Antonio Smith.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Charme P. Allen, District Attorney General; and Ta Kisha M. Fitzgerald, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

*Facts*

*Motion to Suppress*

Defendant filed a motion to suppress evidence prior to trial in which he sought to suppress "all evidence obtained from the illegal search of the Ford Explorer in which [Defendant] was a passenger." Specifically, Defendant sought to suppress a Glock .45 caliber pistol, eleven small bags of marijuana, seven small bags of heroin, and thirty dollars of prerecorded money which were seized during a traffic stop and subsequent search of Defendant's person.

Lieutenant Tony Willis of the Knoxville Police Department ("KPD") received information from officers who were conducting surveillance on a controlled drug purchase that Defendant was seen leaving the apartment of codefendant Montgomery and getting into the passenger side of a red and silver Ford Explorer. Lieutenant Willis was given the tag number of the vehicle and located the vehicle shortly thereafter, in close proximity to the location where the drug transaction took place. Lieutenant Willis saw the vehicle "[d]isregarding a stop sign." At the time, Lieutenant Willis was in an unmarked car so he radioed for backup to arrive to "make the traffic stop." In the meantime, Lieutenant Willis "followed the vehicle as it went up to Hill Avenue, took that exit right by the police department, made a right onto . . . eastbound Hill, which is kind of discombobulated there. . . ." Another unmarked police vehicle picked up surveillance after that so that the officers could "try to avoid being detected." Lieutenant Willis picked up surveillance a few minutes later, following Defendant to the stop sign at Church and Hill. A marked police car made a "traffic stop."

Defendant was instructed to step out of the vehicle. He complied. Lieutenant Willis walked up to the Ford Explorer and, in plain view on the passenger-side floor board, there was a gun. During a pat-down of Defendant, officers discovered "other contraband."

At the conclusion of the hearing, the trial court determined that the motion to suppress was not timely filed and denied the motion solely on that basis. However, the trial court also determined that Defendant did not have a reasonable expectation of privacy in the vehicle in which he was merely a passenger. In other words, Defendant

did not have standing to challenge the suppression of the gun. The trial court determined that the testimony of Lieutenant Willis was credible. Moreover, the trial court found that the officers had probable cause to effectuate the stop of the vehicle and ask Defendant to exit the vehicle. Accordingly, the trial court denied the motion to suppress.

*Trial*

At trial, Officer Robert Rose of the KPD explained that he was working with a confidential informant ("CI") on a controlled drug operation. The CI informed officers that codefendant Montgomery had access to both heroin and marijuana. On January 6, 2015, the CI conducted a controlled buy with money provided by the KPD. Prior to the transaction, the serial numbers of the bills used in the transaction were recorded. The CI wore a transmitter broadcasting audio only because in a previous controlled buy, codefendant Montgomery had nearly discovered the video recording device used by the CI. There were six total officers involved in the surveillance of the controlled buy.

The CI went to codefendant Montgomery's apartment, located within 1000 feet of Rock City Park. Codefendant Montgomery was seated in the living room when the CI arrived and appeared to be sending text messages to someone on her phone. The CI placed the money for the drugs on the coffee table. Codefendant Montgomery "kept trying to get ahold of whoever she was getting ahold of . . . to get - - find out when they were coming." Not "much longer" after that, a man came to the apartment wearing a "hoodie and sunglasses." Codefendant Montgomery grabbed the money off the table and walked to the back bedroom with the man, closing the door after they entered the bedroom. When the pair exited the bedroom a few minutes later, the man left the apartment and codefendant Montgomery set heroin on the table. The CI took the heroin she received from codefendant Montgomery and left the apartment. The CI went straight to the police station and turned the heroin over to police.

KPD Officer Brandon Stryker saw the man in the hoodie enter codefendant Montgomery's apartment while the CI was inside. When the man exited the apartment, he left the area in a "maroon/red" Ford Explorer.

Officer John Holmes and Lieutenant Willis followed the Ford Explorer after it left the apartment complex. While officers were following the Ford Explorer, it travelled within 1000 feet of Green Elementary Magnet School and the YMCA child care services. Lieutenant Willis watched as the driver of the vehicle disregarded a stop sign. The officers were driving in an unmarked car so they called for a marked patrol car to assist in making the traffic stop. During the stop, the officers asked the passenger, later identified as Defendant, to exit the vehicle. Defendant complied. Officers asked Defendant if he "had anything on him" when he exited the vehicle. Defendant admitted that he had some

marijuana. Defendant was placed in handcuffs. When Lieutenant Willis approached the vehicle, he observed a handgun on the floor on the passenger side.

Defendant's person was searched incident to his arrest. Officers found one packet of heroin in his wallet, marijuana in his jacket, and one twenty dollar bill and one ten dollar bill from the controlled buy. The heroin in Defendant's wallet was packaged in the same manner as the heroin the CI purchased from codefendant Montgomery. The marijuana was individually wrapped in small bundles and the small bundles were contained inside one larger plastic bag. Defendant was also in possession of a non-working cell phone. Inside the battery compartment of the phone, officers located "a powdery substance consistent with the substance that [Defendant] had in his possession and which is consistent with the packaging and that of heroin."

Defendant was taken to the police station for an interview. During the interview, Defendant claimed that the marijuana was for personal use. He explained that it was individually wrapped because he had purchased it as "blunt bags." At first, Defendant claimed that he only used heroin. Later, Defendant admitted that he sold heroin for thirty dollars a packet and used some of the heroin in order to test it. He claimed that he had never met his supplier. Defendant explained that the heroin would be dropped off at a specific location and Defendant would pick the heroin up and leave the money at the location. Defendant told police that he bought the gun from a friend for twenty-five dollars.

Forensic testing of the materials by the Tennessee Bureau of Investigation ("TBI") revealed that Defendant was in possession of 1.1 grams of marijuana, .08 grams of heroin, and .04 grams of heroin.

Defendant did not present proof at trial but stipulated that he had a prior felony conviction involving violence, a prior felony conviction involving force, and a prior felony conviction involving a deadly weapon.

Defendant was found guilty by a jury of the sale of heroin within 1000 feet of a park and fined $10,000; delivery of heroin within 1000 feet of a park and fined $2000; possession of heroin with intent to sell within 1000 feet of a park and fined $10,000; possession of heroin with intent to sell within 1000 feet of a public elementary school and fined $25,000; possession of heroin with intent to deliver within 1000 feet of a child care agency and fined $15,000; possession of heroin with intent to deliver within 1000 feet of a park and fined $10,000; possession of heroin with intent to deliver within 1000 feet of a public elementary school and fined $25,000; simple possession of marijuana and fined $1000; possession of a firearm during a dangerous felony and fined $5000; possession of a firearm during a dangerous felony and fined $5000; possession of a firearm during a

dangerous felony and fined $5000; possession of a firearm having been convicted of a felony involving the use of force and fined $10,000; possession of a firearm after having been convicted of a felony involving the use of violence and fined $10,000; and possession of a firearm after having been convicted of a felony involving the use of a deadly weapon and fined $10,000. The jury found Defendant not guilty of two counts of felon in possession of a firearm with intent to go armed during the commission of a dangerous felony.

After the denial of a motion for new trial, Defendant appealed.

## *Analysis*

### *Motion to Suppress*

Defendant contends that the stop and resulting search exceeded the scope required for investigation of a violation of a traffic law. In other words, Defendant argues that the trial court erred in denying the motion to suppress. The State argues that the marijuana, heroin, currency, and gun were properly admitted because they were found during a search incident to a lawful arrest. The State responds that Defendant does not have standing to suppress the handgun because he did not have a legitimate expectation of privacy in the vehicle.

When reviewing a trial court's ruling on a motion to suppress, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolutions of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). Accordingly, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." *Id.* Appellate courts conduct a de novo review of questions of law and the trial court's application of law to facts. *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001). As the prevailing party, the State is "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." *Odom*, 928 S.W.2d at 23.

The Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect against unreasonable searches and seizures. A warrantless search or seizure "is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997).

Our federal and state courts have recognized three categories of police-citizen interactions: "(1) a full-scale arrest, which requires probable cause; (2) a brief investigatory detention, requiring reasonable suspicion of wrongdoing; and (3) a brief police-citizen encounter, requiring no objective justification." *State v. Echols*, 382 S.W.3d 266, 277 (Tenn. 2012). A stop of a vehicle based upon probable cause that an offense is being committed is constitutionally valid. *State v. Vineyard*, 958 S.W.2d 730, 731 (Tenn. 1997). The officers in the case sub judice observed the vehicle in which Defendant was a passenger disregard a stop sign. Defendant's brief candidly states "[o]fficers may order the driver, and perhaps passengers as well, to exit a vehicle which is lawfully stopped for a traffic violation." Defendant further concedes that what the agents did was pre-textual, but it is well settled that as long as there is probable cause or reasonable suspicion to stop a vehicle on a valid basis, it does not matter if that reason is pre-textual to investigate for illegal drugs. *See State v. Orson Wendell Hudson*, No. M2004-00077-CCA-R3-CD, 2005 WL 639129, at *3 (Tenn. Crim. App. March 15, 2005) ("An officer's subjective intention for stopping a vehicle is irrelevant, as long as independent grounds exist for the detention.") (citing *Whren v. United States*, 517 U.S. 806 (1996); *State v. Vineyard*, 958 S.W.2d 730 (Tenn. 1997)), *no perm. app. filed*. Moreover, inquiries into matters unrelated to the reason for the traffic stop are permitted as long as they do not measurably extend the duration of the stop. *Arizona v. Johnson*, 555 U.S. 323, 333 (2009). This Court has determined that asking questions about weapons or drugs does not unreasonably exceed the scope of a traffic stop. *State v. Landon McConaughy*, No. W2008-01645-CCA-R3-CD, 2010 WL 681361, at *7 (Tenn. Crim. App. Feb. 26, 2010), *no perm. app. filed*.

When the vehicle was stopped on the basis of the traffic violation, Defendant was asked to exit the vehicle. He complied. One of the officers then asked Defendant if he had anything on his person. Defendant admitted that he possessed marijuana and was arrested. Defendant was searched in conjunction with his arrest. Our supreme court has stated:

> In order to justify a warrantless search as incident to a lawful arrest, four conditions must be met: (1) the arresting officer must have probable cause to believe that the defendant had engaged or was engaging in illegal activity, *State v. Crutcher*, 989 S.W.2d 295, 300 (Tenn. 1999) (holding that a "custodial arrest," which is required to justify a search as incident to arrest, must be "based on probable cause"); (2) the probable cause must attach to an offense for which a full custodial arrest is permitted—i.e., there must be statutory grounds for a warrantless arrest, *see* T.C.A. § § 40-7-103, 40-7-118(c); *cf. State v. Walker*, 12 S .W.3d 460, 467-78 (Tenn. 2000); (3) the arrest must be consummated either prior to or contemporaneously with the search, *Crutcher*, 989 S.W.2d at 302 n.12; and (4) the search must be

incident to, not the cause of, the arrest. *Id.* at 302 (observing that "[i]t is axiomatic that a warrantless police search may not precede an arrest and serve as part of its justification"); *see Smith v. Ohio*, 494 U.S. 541, 543 (1990); *Hughes v. State*, 588 S.W.2d 296, 308 (Tenn. 1979) (observing that "no search or frisk 'unlawful at its inception may be validated by what it turns up'") (quoting *Wong Sun v. United States*, 371 U.S. 471, 484 (1963)).

*State v. Richards*, 286 S.W.3d 873, 878 (Tenn. 2009).

Defendant argues that the seizure of Defendant exceeded the scope of the traffic stop. We disagree. First, we note that at the trial court level, Defendant challenged the admission of the gun found in the vehicle. On appeal, Defendant argues that the motion to suppress should have been granted to exclude "all evidence obtained as a result of that unlawful seizure, including the narcotics and cash . . . ." The State argues that because Defendant fails on appeal to specifically challenge the admission of the gun, this issue is waived, citing Tennessee Court of Criminal Appeals Rule 10(b). We disagree with the State's argument. "[A]ll evidence" certainly includes any evidence seized as a result of the traffic stop and subsequent search of Defendant's person. The gun at issue was seized pursuant to the plain view doctrine after a valid traffic stop. *See Horton v. California*, 496 U.S. 128, 136-41 (1990); *Armour v. Totty*, 486 S.W.2d 537, 539 (Tenn. 1972). The marijuana, heroin, and money found on Defendant's person were found during a search incident to a lawful arrest. *See State v. Richards*, 286 S.W.3d 873, 878 (Tenn. 2009). We conclude Defendant's constitutional protections against unreasonable search and seizure were not violated. The vehicle was stopped after committing a traffic violation and Defendant was asked to exit the vehicle. When the officers asked if he "had anything on him," Defendant admitted that he had some marijuana. At that point in time, officers had probable cause to believe that Defendant possessed marijuana. *See* T.C.A. § 40-7-103(a) (permitting a search without a warrant for an offense committed in an officer's presence). After the officers had probable cause, they arrested and searched Defendant's person. The search resulted in the discovery of the marijuana, heroin, and currency used in the drug transaction. Defendant is not entitled to relief on this issue. Defendant also argues that the trial court should have suppressed "incriminating statements" he made after the traffic stop. Defendant provides no citations to the record or further argument to identify these statements. Moreover, his motion to suppress filed in the trial court did not seek to exclude "incriminating statements." To the extent he attempts to raise this issue for the first time on appeal, it is waived. *See* Tenn. Ct. Crim. App. R. 10(b); Tenn. R. App. P. 36(a).

*Sufficiency of the Evidence*

Defendant complains that the evidence was insufficient to support his convictions for selling heroin in a drug-free zone and possession of heroin with intent to sell in a drug-free zone. He does not challenge his remaining convictions. Specifically, he insists that the jury could conclude that he did not actually sell the heroin or intend to sell the heroin but merely went to codefendant Montgomery's apartment to purchase heroin and that he received the marked bills as change during his own drug purchase. The State disagrees.

We review Defendant's claim of insufficient evidence mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Id.* Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.* The conviction replaces the presumption of innocence with a presumption of guilt, and the accused has the burden of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

"It is an offense for a defendant to knowingly . . . [s]ell a controlled substance[] or [p]ossess a controlled substance with the intent to . . . sell the controlled substance." T.C.A. § 39-17-417(a)(3)-(4). Heroin is a Schedule I controlled substance. T.C.A. § 39-17-406(c)(11). Additionally, the drug-free zone enhancement applies if a violation of section 39-17-417 occurs "within one thousand feet . . . of the real property that comprises a public or private elementary school, middle school, secondary school, preschool, child care agency, or public library, recreational center or park[.]" T.C.A. § 39-17-432(b)(1).

In this case, at the conclusion of the jury trial, the trial court merged the conviction for delivery of heroin with the conviction for sale of heroin within 1000 feet of a park. Likewise, the trial court merged the three convictions for possession of heroin with the intent to sell and two of the convictions for possession of heroin with the intent to deliver into one count of possession of heroin with intent to deliver within 1000 feet of an elementary school. The evidence was sufficient to support the convictions. When the CI arrived at the apartment, she placed the prerecorded buy money on the coffee table. Codefendant Montgomery appeared to be attempting to get in touch with someone on her phone via text message. Shortly after the CI arrived, a man came into the apartment. Codefendant Montgomery took the money the CI had placed on the table and went into another room with Defendant for a short period of time. When they exited the bedroom, Defendant left the apartment. Codefendant Montgomery handed the heroin to the CI. When Defendant was apprehended shortly thereafter, he was in possession of a twenty dollar bill and a ten dollar bill with serial numbers that matched those of bills given to the CI by police. The heroin purchased by the CI was in the same type of packaging as the heroin found on Defendant's person. Codefendant Montgomery's apartment was within 1000 feet of a city park. The vehicle in which Defendant was riding passed within 1000 feet of an elementary school while he was being followed by police prior to the traffic stop. Moreover, Defendant told police that he sold heroin and had never met his supplier. The evidence is sufficient to support the convictions.

**Conclusion**

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
THOMAS T. WOODALL, PRESIDING JUDGE