IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 23, 2019

## STATE OF TENNESSEE v. FRAZIER LEE SAVAGE

**Appeal from the Criminal Court for Knox County**
**No. 106159    Bob R. McGee, Judge**

_____

### No. E2018-01307-CCA-R3-CD

_____

The Defendant, Frazier Lee Savage, was convicted by a Knox County Criminal Court jury of possession with intent to sell less than fifteen grams of heroin within 1,000 feet of a child care agency, a Class B felony; possession with intent to deliver less than fifteen grams of heroin within 1,000 feet of a child care agency, a Class B felony; possession with intent to sell alprazolam within 1,000 feet of a child care agency, a Class D felony; possession with intent to deliver alprazolam within 1,000 feet of a child care agency, a Class D felony, and possession of drug paraphernalia, a Class A misdemeanor. *See* T.C.A. §§ 39-17-417(a)(2) (2018) (possession with intent to deliver), 39-17-417(a)(3) (possession with intent to sell), 39-17-425 (2018) (possession of drug paraphernalia), 39-17-432 (2018) (providing enhanced penalties for drug offenses committed in Drug-Free School Zones). After a sentencing hearing, the trial court merged the two heroin counts and the two alprazolam counts and imposed an effective twelve-year sentence at 100% service. On appeal, the Defendant contends that the trial court erred in denying his motion to suppress the evidence obtained from a warrantless search of a motel room. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

J. Liddell Kirk, Knoxville, Tennessee for the appellant, Frazier Lee Savage.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Assistant Attorney General; Charme P. Allen, District Attorney General; Hector Sanchez and Miriam Johnson, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

The Defendant's convictions relate to a March 5, 2015 incident, in which a Knoxville Police Department (KPD) officer received a tip from an informant that the Defendant was the subject of a Michigan arrest warrant and that he was staying at a Super 8 Motel in Knoxville. The officer and other members of the KPD Repeat Offender Squad went to the motel with a photograph of the Defendant, found him, arrested him, and performed a warrantless search of the room after removing the Defendant. The officers discovered digital scales, a large amount of money, two cell phones, and a black bag. Inside the black bag, the officers found eleven grams of heroin, prescription medication which was not accompanied by prescribing information for the Defendant, a bus ticket, and a money transfer receipt bearing the Defendant's name.

### Suppression Hearing

At the suppression hearing, KPD Officer Adam Broome testified that he received a tip from an informant that the Defendant had an extraditable Michigan arrest warrant. He said that the informant told him the Defendant possessed heroin and was staying in a room at a Knoxville Super 8 Motel. Officer Broome said that he and other officers verified the warrant before going to the motel. He said that they knocked on the motel door, that the Defendant opened it, and that Officer Broome recognized the Defendant from a photograph. Officer Broome said that they arrested the Defendant and that they performed an initial "sweep" of the motel room. Officer Broom said standard procedure involved doing a sweep of a room to ensure officer safety after arresting a suspect.

Officer Broome testified that, after the sweep, he asked the Defendant for consent to search the room. Officer Broome said that he was the first officer to ask for consent to search and that the Defendant consented. Officer Broome recalled that several officers asked for and received consent, as well. Officer Broome said that none of the officers had a written consent to search form, that no one asked the Defendant to give written consent, and that the Defendant was cooperative. Officer Broome stated that neither he nor the other officers read the Defendant his *Miranda* rights until the Defendant was at the police station.

Officer Broome testified that before taking photographs, he saw a plastic bag corner on the table inside the room. He said that the officers found heroin, medication, digital scales, and money inside a black bag during the search. He said they found an iPhone plugged into a charger near the bag. He recalled the Defendant's saying that the black bag was not his and that the Defendant claimed he did not know the bag was in the room, despite its containing a money transfer receipt bearing the Defendant's name. Officer Broome said the Defendant was the only occupant of the room.

KPD Officer Brandon Stryker testified that Officer Broome informed him that the Defendant had an outstanding warrant. Officer Stryker recalled that Officer Holmes knocked on the door and that the Defendant opened the door. Officer Stryker said he identified the Defendant, went into the room, and arrested the Defendant. Officer Stryker said he did not ask the Defendant for consent to search the room, but he recalled that the Defendant was asked and that he consented. Officer Stryker recalled that Officer Jinks and Officer Holmes informed the Defendant multiple times of his right to rescind consent. Officer Stryker said they reminded the Defendant at least twice of this right. Officer Stryker said the Defendant claimed the black bag was not his.

The Defendant testified that he heard knocking at his motel room, that he saw a large, white male in plain clothes, and that he opened the door. The Defendant said he asked the individual to identify himself and said that the man "ran in" and arrested him. He said that the officers had shotguns and weapons and that he dropped to the floor. The Defendant stated that the officers informed him of the Michigan arrest warrant, handcuffed him, and placed him in the hallway. He said that they did not show him the warrant or any paperwork and that they did not read him his *Miranda* rights. The Defendant stated that the officers did not ask for consent to search the room but that they were already in the room searching with the door closed while he stood handcuffed in the hallway.

On cross-examination, the Defendant testified that the officers may have asked for consent but that he never consented to the search. On redirect examination, he restated that he did not give "permission" and said he did not think the officers asked for consent. He said no officer told him that he could stop the search at any time. He said the officers asked him about the black bag but that he did not know what they were talking about.

Following the hearing, the trial court denied the Defendant's motion to suppress. The court credited the testimony that Officer Broome asked for consent to search the room and that Officer Stryker heard other officers tell the Defendant of his right to withdraw consent. The court found that through acquiescence, the officers could have circumstantially inferred the Defendant's consent and that by not denying it, the Defendant effectively consented to the search. The court found that the officers arrived with the purpose of arresting the Defendant and that the officers had the right incident to the Defendant's arrest to search the room for weapons.

## Trial

At the trial, Officer Broome testified that, as a matter of procedure, officers explained that consent to search may be revoked by suspects who have previously consented. He said that he and other officers explained this to the Defendant multiple

times. He said that he would have stopped the search at any time if the Defendant had asked but that the Defendant consented.

Officer Broome testified that he photographed the room. He stated a black bag was in the corner of the room and that it contained controlled substances. He said that the Defendant's iPhone was plugged into a charger and placed over the black bag. Officer Broome stated that he saw a clear plastic bag with a corner torn from it sitting on the table. Officer Broome said that, in his experience, narcotics were often packaged in this manner. He said that drug dealers took narcotics, pushed them into a bag corner, twisted the bag, pulled it apart, and tied the corner.

Officer Broome testified that he found heroin and clear plastic bags inside the black bag. He said that a hair trimmer kit was inside the bag and that the kit held a bag of pills. He said that the officers also found a money transfer receipt with the Defendant's name on it inside the bag. Officer Broome said razor blades were found in the room and that drug dealers commonly used razor blades to "cut" drugs to get precise amounts. Officer Broome testified that they found two sets of digital scales, which were also commonly used by drug dealers.

The Defendant testified that he did not know how the drugs got into the black bag. He acknowledged that some of the items inside the bag were his but denied ownership of the scales, heroin, razor blades, pills, and plastic bags. He testified that the only thing he knew at the time of the search was that the officers had a Michigan arrest warrant. After the jury returned its verdicts, this appeal followed.

## Analysis

The Defendant contends that the trial court erred by denying his motion to suppress evidence recovered from the search of his motel room and the black bag. He argues that none of the officers asked for consent, nor did he consent to the search. He also argues that the bag was not in an area within his immediate control relative to a search incident to a lawful arrest. The State counters that the trial court credited the officers' testimony that Officer Broome asked for consent to search and that the Defendant consented to the search. Additionally, the State argues that the search of the bag was a valid search because the Defendant denied ownership of the bag. We agree with the State.

A trial court's findings of fact on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996); *State v. Jones*, 802 S.W.2d 221, 223 (Tenn. Crim. App. 1990). Questions about the "credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier

-4-

of fact." *Odom*, 928 S.W.2d at 23. The prevailing party is entitled to the "strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence." *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998); *see State v. Hicks*, 55 S.W.3d 515, 521 (Tenn. 2001). A trial court's application of the law to its factual findings is a question of law and is reviewed de novo on appeal. *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997). In reviewing a trial court's ruling on a motion to suppress, this court may consider the trial evidence as well as the evidence presented at the suppression hearing. *See State v. Henning*, 975 S.W.2d 290, 297-99 (Tenn. 1998); *see also State v. Williamson*, 368 S.W.3d 468, 473 (Tenn. 2012).

The Fourth Amendment to the United States Constitution and Article I, section 7 of the Tennessee Constitution prohibit unreasonable searches and seizures. *See* U.S. Const. amend. IV; Tenn. Const. art. I, § 7. The Tennessee Supreme Court has interpreted these two provisions to be the same in intent and purpose. *State v. Turner*, 297 S.W.3d 155, 165 (Tenn. 2009); *State v. Binette*, 33 S.W.3d 215, 218 (Tenn. 2000). "[A] warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression" unless it is conducted pursuant to one of the narrowly-defined exceptions to the warrant requirement. *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997). One exception to the warrant requirement is a search conducted pursuant to voluntary consent. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). Because voluntary consent differs in nature from the other exceptions to the warrant requirement, a person approached for consent is presumed free to decline the request. *State v. Cox*, 171 S.W.3d 174, 184 (Tenn. 2005). A defendant, therefore, may provide proof showing that he or she was not "free" to decline a request to search. *Id.* Voluntary consent is determined by the totality-of-the-circumstances test. *Schneckloth*, 412 U.S. at 249.

Another recognized exception to the warrant requirement is a search incident to a lawful arrest. *State v. Robinson*, 414 U.S. 218, 234-35 (1973); *State v. Crutcher*, 989 S.W.2d 295, 300 (Tenn. 1999). When police officers make a lawful custodial arrest, they are permitted, as incident to the arrest, to search the person arrested and the immediately surrounding area. *Chimel v. California*, 395 U.S. 752, 763 (1969). In Tennessee, it is "incumbent upon [officers] to take some action that would indicate to a reasonable person that he or she is under arrest" to justify a search incident to arrest. *State v. Crutcher*, 989 S.W.2d at 302. However, a defendant's disclaimer of interest in the object being searched results in the loss of his or her expectation of privacy and the right to question the legality of the search and seizure. *State v. Ross*, 49 S.W.3d 833, 841-42 (Tenn. 2001).

In the present case, the trial court properly denied the Defendant's motion to suppress. The credited testimony reflects that Officer Broome asked the Defendant for consent to search and that the Defendant consented. Officers Holmes and Officer Jinks informed the Defendant twice of his right to revoke consent. The Defendant did not

revoke his consent.  During the search, the officers found heroin, pills, plastic bags, razor blades, and digital scales. The record supports the trial court's finding that the Defendant consented to the search.  *See Schneckloth*, 412 U.S. at 219; *Cox*, 171 S.W.3d at 184.

Furthermore, even if the Defendant had not consented, the officers had a right to search the motel room incident to the Defendant's arrest.  The record reflects that, when he opened the door, the officers identified him as the person on the Michigan arrest warrant and that they arrested him.  As a precautionary measure, the officers performed a sweep of the room to ensure their safety in the event that weapons or other individuals were in the room.  During this sweep, Officer Broome saw a clear plastic bag on the table that appeared to be for packaging drugs.  The officers also found a black bag that contained heroin, pills, plastic bags, and a money transfer receipt with the Defendant's name.  They asked the Defendant about the bag, and the Defendant said that it was not his and that he did not know it was in the room. Because the Defendant disclaimed ownership of the bag, the Defendant was not entitled to an expectation of privacy regarding the bag and its contents.  *See Ross*, 49 S.W.3d at 841-42.  The Defendant is not entitled to relief on this basis.

In consideration of the foregoing and the record as a whole, we affirm the judgments of the trial court.

_____
ROBERT H. MONTGOMERY, JR., JUDGE